*Kinney & Ballou,* for plaintiff.

*P. Neumann* and *J. A. Magoon,* for defendants.

---

CHA FOOK, KAM YOUNG FAT, KUM HOY, HO MING, HO SOY YOUNG, CHUM YET, YOUNG HOY and KAM PAK YUEN, doing business under the firm name of Tong Tai Wai, *v.* LAU PIU and LAU YAU, partners under the name of See Sung Wai, and Lau Chew, Agent.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED MARCH 17, 1896.            DECIDED MAY 30, 1896.

JUDD, C.J., FREAR AND WHITING, JJ.

It appearing to be doubtful whether a dam erected by defendants across a river to raise water for irrigation purposes would obstruct the flow of water in times of freshets and cause the water to overflow on plaintiffs' land to the irreparable injury of plaintiffs, an injunction against the maintenance of the dam is withheld.

The effect of the dam in backing up the water of the river and causing water to stand in plaintiffs' drains is injurious to plaintiffs by interfering with the effectual drainage of the land, and defendants

are decreed and ordered to open the gates of the dam on reasonable notice, whenever plaintiffs desire to drain off their lands.

The findings of fact of the lower court, while entitled to great weight, are not as binding and conclusive upon the Appellate Court as the verdict of a jury, but will be subject to review.

OPINION OF THE COURT BY JUDD, C.J.

This case comes to us by appeal from a decree of a Circuit Judge of the First Circuit, granting an injunction against defendants' maintaining a dam. The facts, succinctly stated, are as follows: The plaintiffs have a rice plantation at Waikele, Ewa, Island of Oahu, of about forty acres in extent, bordering on the Waianae side of the Waikele river. This land has been in the occupation of the plaintiffs for many years, and a large proportion of it has acquired by prescription the right to drainage into the Waikele river.

The defendants have lately come into occupation of a quantity of land not entitled to water by prescription on the opposite (Honolulu) side of the said river, but below it and nearer the sea. This land they are now making into a rice plantation, and in order to irrigate it were at the time the bill was filed constructing a dam across the said river in order to raise the water of the river sufficiently high to flow in a ditch to their land. The dam has since been completed. The members of the court visited the premises on the 20th March last, since the argument of the case on appeal.

Without discussing the testimony adduced in detail, which is voluminous and contradictory in some respects, we find that although there is an embankment between the defendants' plantation and the river, somewhat higher in general than the embankment between the plaintiffs' plantation and the river, the general level of the two plantations is about the same. Each plantation has a very gradual slope, so that they can be irrigated, as a rule, by letting the water from one rice patch to the next one below it. Where in portions of the plaintiffs' land this method is not pos-

sible owing to many of the patches being on the same level, water is conducted to the patches below them by independent ditches.

The plaintiffs claim that the Waikele river is subject to heavy freshets which occasionally are so great as to overflow the land on both sides of the Waikele stream, to the damage of the rice plantations. We understand that the plaintiffs admit that these exceptional freshets of extraordinary volume would not be materially increased in their damaging effects by the presence of the dam, but that there occur frequently freshets of considerable size which the dam would seriously augment and cause the water to flow upon the plaintiffs' plantation to their damage, and that the presence of the dam is a constant menace. The effect of the dam is to raise the general level of the water of the river a little over two feet above its normal height, and to back the water up the river a considerable distance. Plaintiffs' witnesses say that the water in these frequently occurring large freshets would be raised by the dam so that the water would overflow the river bank on the plaintiffs' side, it being lower than defendants', and thus greatly damage their plantation. This is disputed by defendants' witnesses. None such freshet is testified to as having occurred since the dam was completed, and on an inspection of the premises and as a result of experiments made in closing and opening the gates of the dam, we are not convinced that such would necessarily be the case, the banks in the immediate neighborhood of the dam being high enough to confine the water of ordinary freshets to the river bed. We ought not to enjoin the maintenance of a dam without which defendants' enterprise would perish upon conjectural testimony. Where the liability to injury is doubtful, the extraordinary remedy by injunction should be withheld, and we are not convinced in this case of the imminence of the danger. High on Injunctions, Sec. 22, says: "An injunction should never be granted except in a clear case of irreparable injury, and with a full conviction on the part of the court of its urgent necessity."

The other ground advanced by plaintiffs for the injunction is

that the dam by backing up the water of the river will interfere with the effective drainage of plaintiffs' lands. We find that it is essential in rice cultivation to drain off the water from the rice patches twice during each half yearly crop. The land should be drained first about two months after the rice plants have been set out, and be without water for from one to four weeks, according to the nature of the soil, in order to strengthen the growth of the plant, and again a week or two before the grain is harvested, in order that the land may be hardened while the laborers are walking through the fields and reaping the rice. It is obvious that this is necessary for the convenience of the laborers, and that heads of rice be not laid, when cut, in soft mud. Then, too, the land must not be water-soaked when the first plowing for the next crop is being done. We find from the testimony and from inspection of the premises that the backing up of the water by this dam will obstruct somewhat the prompt and effectual draining of the plaintiffs' land. The presence of water backed up from the river in plaintiffs' drains will undoubtedly have this effect. The plaintiffs' right to proper drainage should not be interfered with by defendants' dam, and plaintiffs are entitled to a decree ordering defendants to remove all the gates from the dam whenever, on reasonable notice, the plaintiffs require this to be done in order that they may drain their land. Rice cultivation in this neighborhood is so similar in character on the plantations of the respective parties that the defendants can readily adapt their work to that of plaintiffs and have the draining required for their plantation occur at the same time with the plaintiffs'. As regards the dam, in times of large freshets self-interest on the part of the defendants would require them to open the gates of the dam whenever the rise of water would seem to threaten their neighbors' land, in order to escape or lessen their liability for damage.

It remains for us to consider the first ground taken by plaintiffs' counsel, that the Circuit Judge, having ordered the injunction to issue upon the facts as found by him, the findings made by him are as binding and conclusive upon the Appellate

Court as would be the verdict of a jury. Many cases are cited to support; among them are *Monting v. Leong Kau*, 7 Haw. 486, where this effect is given to a Master's report, and *Nawahi v. Kekaula*, 9 Haw. 43, where it is claimed that this effect was given to a decree of a single Justice, but in this case the Appellate Court found the evidence "sufficient and very strong to support the decree." While great weight has always been given to the findings of fact of the Judge who first heard the case, and this should be so, because he has seen and heard the witnesses, this court has also felt at liberty to review carefully all the evidence sent up in appeal cases, and to form such conclusions upon them as seems proper. This having been the practice for so long a time, we do not feel at liberty to disturb it.

The injunction prayed for and allowed should be dissolved without prejudice to the plaintiffs' right to renew application for the same whenever events shall justify it, and a decree will be signed ordering the removal by defendants of the gates of the dam upon reasonable notice whenever the plaintiffs require it in order to facilitate the drainage of their land.

Costs divided.

*Hartwell, Thurston & Stanley* and *C. Brown*, for plaintiffs.
*J. A. Magoon* and *W. S. Edings*, for defendants.

### CONCURRING OPINION OF MR. JUSTICE WHITING.

I am not satisfied that an injunction ought to be granted under the evidence and circumstances of this case to prevent the defendants maintaining their dam, which has been completed since the bringing of the suit, and I concur in the opinion of the Chief Justice that such injunction should be refused at the present time without prejudice to the plaintiffs to renew their petition if the facts should hereafter warrant it.

It seems to me, under the circumstances of the case, that it is just and right that the defendants' use of the dam should be subject to the uses of drainage of plaintiffs' land as decided by the Chief Justice, and I so far concur.

The case as presented to us is very unsatisfactory, and it does not present such a clear and distinct issue as will enable me to decide upon the questions of law involving prescriptive and riparian rights, and how far the common law of England in relation thereto is applicable to the conditions of this country in regard to water. One element in this particular case which needs fuller explanation is the fact that the river itself is claimed as being owned by the estate of B. P. Bishop, and the whole river is leased to C. A. Brown, the lessor of defendants, and at the same time Brown's lessor has leased part of the land bordering on the river to some of the plaintiffs.

This is a cause in which the court, being in doubt, should exercise its sound discretion in refusing the injunction, but, however, without creating a bar to other actions to protect plaintiffs' alleged rights if they are satisfactorily found to be endangered; that is, without prejudice to any further action or suit.

### PARTIALLY DISSENTING OPINION OF FREAR, J.

I incline to the opinion that the facts in this case are such as to call for an injunction of some sort, but there is such uncertainty in regard to a number of points involved that it will perhaps be more in the interests of justice not to conclude either party at present, but to dismiss the bill without prejudice.

I need not now enlarge upon the facts or law as they appear to me, or state in detail wherein my views differ from those of the Chief Justice.

I should, however, state that I cannot agree that the dismissal of the bill without prejudice should be coupled with an order for the opening of the gates of the dam by the defendants on notice from the plaintiffs at certain seasons. The chief question that was raised upon this point related to the necessary depth of drains required for the proper cultivation of rice upon plaintiffs' land, and on this question there was no satisfactory evidence. But it seems to me the chief question that should have been

raised was, what were the plaintiffs' rights, not present needs, as to drainage? They did not attempt to show a prescriptive right to deep drainage, and by their own evidence, their prescriptive right, if any, to surface drainage is not interfered with. If they have a prescriptive right to deep drainage, or if they have a riparian right to such drainage, then I do not see why the defendants should be allowed to infringe upon that right at all. In other words, the plaintiffs' right, whatever else it may be, appears to be a continuous right; if it is not infringed upon, no injunction at all should issue; if it is infringed upon, the injunction should be continuous. The court should not permit one person to take or use the property of another against his consent, even though the latter for the time being may not need to use it himself, especially when such taking or user might by long continuance ripen into an adverse right.

If defendants are willing to open the gates at plaintiffs' request, or to do other things which might be suggested, they are at liberty to do so, but I do not see how the court can apportion property among the parties according to their present needs and without regard to their rights.