IN THE MATTER OF THE ASSESSMENT OF TAXES ON THE FOLLOWING SUGAR PLANTATIONS: Lihue Plantation Company; Grove Farm, (G. N. Wilcox); Waiakea Mill Company; Hilo Sugar Company; Onomea Sugar Company; Pepeekeo Sugar Company; Hakalau Plantation Company; Hamakua Mill Company; Paauhau Plantation Company; Union Mill Company; R. R. Hind, (Hawi Mill); Hutchinson Sugar Plantation Company; Hawaiian Agricultural Company; Waimanalo Sugar Company; Ewa Plantation Company.

APPEALS FROM TAX APPEAL COURTS.

SUBMITTED OCTOBER 4, 1897. · DECIDED NOVEMBER 18, 1897.

JUDD, C.J., FREAR AND WHITING, JJ.

OPINION OF THE COURT BY FREAR, J.

These are appeals under the general tax law of 1896, (Act 51), the scope and effect of which were set forth at some length in *Inter-Island Steam Nav. Co. v. Shaw*, 10 Haw. 624. The distinguishing feature of the Act, so far as it relates to the present cases, is that it requires several kinds or parcels of property when combined as the basis of an enterprise for profit to be assessed as a whole, whereas previously the several parts of such property had been assessed separately. In 1896, the year the law went into effect, the sugar planters for the most part returned their property as under the old law, and the several assessors raised the valuations to the amounts which they deemed

proper under the new law.  Thereupon, from various considerations, compromise valuations were agreed upon in most cases. This year also the planters, at least those involved in these cases, for the most part returned their property as under the old law, giving merely the valuations of the separate items.  The assessors raised the valuations and the planters appealed to the tax appeal courts of their respective districts, two on the Island of Kauai, eleven on the Island of Hawaii, and two on the Island of Oahu.  In most of these cases the planters appealed only on the amount of the assessment in excess of the compromise valuation of last year.  The appeal courts in some cases sustained the assessor, in others they sustained the taxpayer, adhering to the compromise valuation, but in most cases they fixed the valuation at an amount between the two.  The present appeals were then taken to this court, in some cases by the assessor, in others by the taxpayer, in some by both parties.  The assessments last year were made as of July 1, 1896, those now in question as of January 1, 1897.  In order to avoid repetition we shall first consider a number of general questions that have arisen in these cases and then give the more prominent characteristics of each plantation and our conclusion.

The first question that naturally arises relates to the status of a tax appeal case in this court.  In our opinion the decision of a tax appeal court is to be regarded in this court, not in the light of a verdict of a jury or of the court in a jury waived law case, but rather in the light of a decision by a Circuit Judge at Chambers.  In other words, this court while giving a certain weight to a decision of a tax appeal court, is authorized to form its own estimate of the proper assessment as shown by the evidence.  A tax appeal occupies about the same position as an equity appeal in this court.  This is substantially the view taken in the *Inter-Island* case above cited.  See pp. 625, 639.  See, upon an equity appeal, *Cha Fook v. Lau Piu, Ib.* 308.  Of course, this court can in no case place a valuation outside of the limits fixed by the appeals.

As to whether the compromise valuations of last year should

be adhered to in the absence of proof that a material change in values occurred between July 1, 1896, and July 1, 1897, we are of the opinion that some weight should be given to the compromises and yet not so much weight as counsel for the Hawaii plantations contends for. Those compromises were made under peculiar circumstances. It does not appear how fully or carefully the questions involved were considered. Apparently the assessors were not altogether satisfied with the compromise valuations, but yielded to some extent to the advice of the Executive Council. The planters themselves also apparently did not regard those valuations as of a continuing nature. Not only did they not return their plantations at those valuations this year, but they, at least those on Hawaii to whom the offer was made, refused last year to agree upon those valuations for January 1, 1897, as well as for July 1, 1896.

We however fully agree with counsel that valuations should not be changed from year to year for light reasons. Under the old law when the various items of property composing a plantation were assessed separately, the total valuation of the plantation, which was merely the sum of the values of the parts regarded separately, naturally would change from year to year even if only to a very slight extent in some cases. But under the new law the value of the property as a whole should not vary with every little change in the sum of the values of the parts regarded separately. For instance the value of the plantation as a whole would not vary materially merely because there was on hand more sugar or fertilizer, or because the price of sugar was higher, or because there were more acres of matured cane, at one time than at another time. No doubt such changes as these may properly be considered, but not only is it desirable that valuations for the purposes of taxation should be of a somewhat lasting character, but in valuing the property of an enterprise as a whole, intending purchasers consider chiefly the earning power of the property in the long run as shown by its past history and future prospects and possibilities.

The main consideration is the future; the past being of im-

portance chiefly as a help in determining what the future is likely to be. And in considering the past, although the statute (Sec. 68) requires the taxpayer to state in his return "what the net profits as well as the gross proceeds and actual running expenses of such enterprise have been during the twelve months next preceding," yet the assessor is not limited to a consideration of these factors for the preceding twelve months, for not only is there no attempt to so limit him in the statute (see Sec. 17) but it would be highly improper to consider these matters for one year only, if he could ascertain them for a longer period. An enterprise may pay handsomely one year and even suffer a loss another year, and yet the value of its property may vary but little during the two years. The tax in question is not an income tax, depending for its amount upon the income for the year preceding, but a tax on property the earning power of which is one of the most potent factors in determining its value. Nor is any single or arbitrary rule prescribed in the statute for estimating the value of the property. Not only could no one rule be justly followed in all cases, so varying are the factors that go to determine the values in the different cases, but the statute itself provides that "there shall be taken into consideration," besides the matters specially enumerated "all other facts and considerations which reasonably and fairly bear upon such valuation." The question is, what is the fair and reasonable value of the property as a whole, *all* things considered; not, what is the arbitrary amount (which could scarcely be called value) that would be obtained by considering only certain things.

A distinction should be made between properties yielding steady profits for a number of years and those the profits from which are variable.

Dividends should not be confounded with net profits. In most of the cases now before us we have the net profits for only one or two years, and only the dividends for other years. In some cases planters have returned as running expenses what is really capital expenditure, as, for example, sums expended in purchasing lands or otherwise increasing the permanent property

or earning power of the plantation.  In valuing properties, therefore, in so far as earnings are considered, dividends alone are not a correct criterion.  What is expended by way of investment as distinguished from running expenses should be added to dividends.  Further there may be a distinction between plantations even in respect of what is expended for running expenses.  No doubt a planter may include in running expenses whatever is necessary to maintain the plantation efficiently.  Now, if one plantation is kept at the top notch of efficiency and another is allowed to run down through failure to replace worn or antiquated machinery with new or improved machinery or otherwise, although the two plantations may pay equal dividends, yet the latter really pays as dividends what should have been put into running expenses, and an allowance should be made on that account.  In other words, as what is laid out in capital expenditure should be considered in addition to dividends, so what should have been, but has not been, laid out in maintaining proper efficiency should be allowed for in the other direction.  Of course this cannot be accurately estimated, but can be allowed only in a general way.  Some plantations are evidently kept up properly and others have been neglected—sometimes probably through lack of means.

An important question in considering the past of a plantation is whether it has been a growing or a declining plantation, as, for example, through changes in its water supply or the extent of its area of cultivation or in other respects,—this, of course, in so far as such changes tend to indicate what the future will be.  In some districts for instance the rainfall, perhaps the only or principal source of the water supply, has been gradually diminishing, while in other cases, the supply, whether from rain, streams or wells, seems assured indefinitely.  In some cases, a plantation may have apparently just taken a fresh start, or entered upon a new lease of life, as it were, through the acquisition of additional lands or water supply or a change in its variety of cane or a more extensive use of fertilizers, or for some other reason.  In such a case the net profits of the past would not be

of the same weight as they would be in other cases. And yet the prospects for the future in such a case should not alone be considered or the value be placed at once at the full amount which such prospects or anticipations may seem to some to justify, for experience may prove them to be largely illusory. The conservative, not the speculative, spirit should control in matters of assessment.

Of course the amount and character of the actual tangible property has an important bearing on the value of a plantation as a whole. The extent of its land, its location and topography, the character of the soil, transportation and shipping facilities, the character and extent of the water supply, and numerous other matters may and should be considered and yet after all the resultant or effect of these is shown largely by the net profits. Each of these elements is considered to some extent in considering the net profits, for each as a rule helps to increase or diminish these. Still this is not always the case. A plantation may, for example, own vast tracts of forest land in fee simple of which it makes no use at present and which does not affect the profits of the plantation and yet such land may contribute materially to the value of its property as a whole, as, for example, if it should be suitable for the cultivation of coffee or other products although not at present devoted to those purposes.

In connection with this matter of the actual specific property of a plantation may be noticed an error under which at least one company labored. This company, or at least its principal witness, failed to distinguish between the value of its leasehold interest and the value of its lessor's interest and was under the impression that if it paid the lessor's taxes under a covenant in its lease to do so, the value of the lessor's interest should be deducted from the total value of the plantation in determining what taxes of its own the company should pay. A payment of taxes under a covenant in a lease is clearly in the nature of a payment of rent to the lessor and is not a payment of taxes so far as the lessee is concerned. It is true, of course, that the lessor's interest should

not be assessed to the lessee as well as to the lessor. Only his own interest should be assessed to the lessee.

Having considered to some extent the past and present as throwing light upon the future, let us now turn to what lies more particularly in the future. Facts or events that have transpired since the date of assessment and prior to the date of the hearing of the tax appeal are, of course, not to be considered. The cash value of property at a given time is determined by what people then believe it to be worth, not by what it may turn out afterwards to have been worth. Consequently future prospects but not subsequent events may be considered.

A very important point of difference between plantations is found in the character of their landed estates. A plantation which owns its land in fee simple is worth more than one which has only a leasehold interest. Some leases are long, others short. Generally only a portion of the land is held under lease, the proportion varying greatly. Often there are many leases expiring at different times. The probability of being able to renew the leases at fair rates or to purchase the land varies greatly. In some cases the lands can probably be made use of as profitably for other purposes as for cane cultivation; in other cases not. In some cases they are so situated that there may be competition for them between different cane planters; in other cases there would probably be no such competition. In some cases the plantation could continue well without the leased land, in other cases the land from its location or extent or for other reasons would be almost indispensable. Thus there are many circumstances to be considered. Somewhat analogous to a leasehold interest held by a plantation which has its own mill is a contract under which a planter who does not own a mill, has his cane ground by a plantation which has a mill. In this connection we may notice some points of comparison made especially in the Kauai cases. It was shown in those cases that the planters were paying a much larger tax per ton of sugar produced than was paid by many other plantations. Such a comparison clearly is entitled to little if any weight. It leaves out of account not only the varying cost

of producing sugar on the different plantations, but also the fact that the plantations in question owned most of their lands in fee simple while those with which they were compared held theirs largely under lease. A second basis of comparison relied on by the Kauai planters was the capitalization of their net profits. They showed that they were earning (net) a smaller percentage than was earned by certain other planters on the assessed values of their plantations. This method of comparison also leaves out of account the fact that the lands of the other plantations were largely leasehold. The facts relating to those other plantations were not shown with sufficient completeness to enable the court to say whether the comparative valuations were fair or not. As already remarked, no one rule can be applied to all cases alike. It is natural for each taxpayer to select one point or a few points apparently favorable to his own case and in respect of which he feels that he has been discriminated against and to rely largely upon such point or points to sustain his case, irrespective of other points of comparison. But all facts that bear upon the value must be considered. We are of the opinion, however, that great care should be taken to place proper valuations upon the different plantations regarded in comparison with each other as well as regarded singly. Discrimination between different taxpayers, unless based on real differences in circumstances, is even more objectionable than general excessive taxation.

There are two principal matters of uncertainty that affect the plantations as a whole—the "Treaty" and labor. The uncertainty in regard to the supply of labor depends largely upon whether "annexation" takes place or not. Without annexation, there would be comparatively little uncertainty in regard to labor,—treaty or no treaty. With annexation there would be no uncertainty in regard to the benefits hitherto enjoyed under the Treaty, but there would be at least for a time great uncertainty in regard to labor. An attempt was made in the present cases to show that on the first of January of this year the Treaty was in great danger. It appears that news had already been received here of an attack upon the Treaty before Congressional com-

mittees in the United States, but positive news tending to indicate that the attack might be successful was not received until some months later, and the prospects for annexation on the first of January were brighter than they had been on July 1, 1896, the date of assessment last year. While some allowance should be made for the special uncertainties existing on the first of January in these respects, yet the evidence tends to show that plantation values were not in fact then greatly affected thereby. The most important question in this connection is what allowance should be made in general for the uncertainties of the sugar industry, of which uncertainties that in regard to the Treaty (or annexation) is the most conspicuous. On this question a number of witnesses were introduced as experts to show that capital invested in the sugar industry in these islands should yield from 20 to 25% profits per annum. If these witnesses, who for the greater part made only general statements, mean that in every case sugar plantations are worth only four or five years profits, then their testimony is contradicted by the whole history of the sugar industry in this country and in the case of some of these witnesses by their own recent acts. But their testimony may be explained by considerations which they probably assumed although they did not state them. If it is meant that some plantations must pay 25% in order to make up for other plantations which pay little or nothing, in order to justify a capitalist in investing in sugar stocks indiscriminately; or if it is meant that a plantation must have prospects of paying ultimately 25% in order to justify a capitalist in investing at the start before success is assured by actual experience and with the prospect of several years during which no dividends will be paid, the testimony can be satisfactorily explained. This is perhaps what is meant by one witness who bases his statement on a varied experience of twenty years and in connection with many plantations. But this is quite different from the proposition that a plantation under the most favorable conditions must yield 20 or 25% in order to be worth par. The percentage to be expected from investments in sugar is smaller now than it was twenty years ago when the

rates of interest were much higher and when the uncertainties
in regard to the price of sugar and the cost of production were
greater. A plantation having only a leasehold should pay a
larger percentage on its value than one which owns its land in
fee. No single percentage can be expected of all plantations
at one time or of one plantation at all times. One witness called
as an expert testified more definitely and with reference to the
particular circumstances. In answer to the question, "What do
you consider a fair rate for an investment in sugar, an average
investment, having regard to the hazardous nature of the invest-
ment?" he said: "I don't quite understand the question. Ten
per cent. or even less under some circumstances would be con-
sidered a good rate, but that would have to be under good cir-
cumstances." In other words, instead of answering the general
question as did the other witnesses without explanation, he stated
what would be considered a fair rate under particular circum-
stances. It seems to us that a sugar plantation under favorable
conditions, as, for example, one that owns its land in fee, has for
a period of years paid, say, 12 or $12\frac{1}{2}\%$ and has besides been
maintained in a state of efficiency and has every prospect for
doing as well in the future as it has done in the past, would
generally be considered to be worth par. Of course the circum-
stances of no two plantations are the same.

The last point to which we shall refer is that relating to the
prices of sugar stocks. Just as the effect of many factors that go
to determine the value of the property is shown largely by the
net profits, so the effect of all the factors is shown largely by the
actual sales of stock, for this shows what persons who actually
invest consider the property to be worth. And yet here also
distinctions must be made. Small blocks would generally sell
at higher prices than large blocks. A large number of sales
would be a surer test than a small number. It makes a difference
also whether the purchasers are persons competent to judge or
not. Allowances must also be made for high prices paid for
special reasons, such as to obtain control, or because of sentiment,
etc. The value of a plantation may even be greater than the

market value of its stock would at first seem to indicate; for if the plantation is in debt, the market value of the stock would tend to indicate merely the excess of the value of the property over the indebtedness.

In view of the foregoing considerations and others which it is not necessary to mention, we shall now state the principal features and our conclusion in each case. In these statements many matters of detail, although considered by us, must necessarily be omitted. Valuations cannot be accurately estimated. It is shown in these very cases that the most experienced men in the sugar business differ widely in their estimates of the value of the same plantation. In some cases we have not all the evidence that we should like. We can only exercise our best judgment upon the evidence before us in each case. We shall consider the Kauai cases first, then the Hawaii cases beginning with the Waiakea Mill Company and proceeding in geographical order around the island and lastly the Oahu cases.

Lihue Plantation Company. District of Lihue, Island of Kauai.

Taxpayer's valuation ..................$1,000,000
Assessor's valuation ................... 1,409,000
Tax Appeal Court's valuation.......... 1,210,615

Appeal by Assessor.

Land, 18,579 acres fee simple; 17,000 leasehold. Tonnage of sugar increased from 5,548 in 1892 to 8,803 in 1896.

Area of cultivated land not given. The yield is large per acre. 1-8 to 1-10 of cane land is leasehold.

Land mainly irrigated. Supply of water abundant.

Detailed value of property as returned, including Hanamaulu Mill, $923,915.50.

Dividends in 1892 $42,000; 1893-1896 average annual dividends $169,750.

Gross receipts for 1896..............$588,231.71
Actual running expenses, 1896........ 354,683.83

Net profits to 1st January, 1897..$233,547.88

In addition to paying large dividends it is apparent that large sums are expended from year to year in improvements and enlargement of area to increase the output and general efficiency of the estate.

Capital stock $700,000, par value $100 a share.  Stock sold in 1896 at $275 and $300.  It is claimed by the taxpayer that $300 per share was paid in some cases for sentimental reasons and to secure control of the stock.  An appraisement made in 1896 by W. F. Allen, P. C. Jones and B. F. Dillingham to fix a legacy duty, valued a block of 500 shares at a little over $285 a share.  At this rate the whole plantation would be worth $2,000,000.

We place the valuation of the property in question at $1,300,000.

Grove Farm (G. N. Wilcox).  District of Lihue, Island of Kauai.

Taxpayer's valuation ...................$130,000
Assessor's valuation ..................... 168,450
Tax Appeal Court's valuation............ 168,450

Appeal by Taxpayer.

Land, 9,269 acres fee simple; about 1,600 in cultivation. Tonnage of sugar increased from 1,903 in 1895 to 2,627 in 1896.

Land irrigated.  Good supply of water.

No detailed valuation given.  Returned in 1896 by taxpayer as worth $171,505.68.

Gross receipts for 1896...............$117,318.63
Actual running expenses, 1896........  67,082.70

Net profits to 1st January, 1897..$ 50,235.93

Has contract with Lihue Plantation Co. to manufacture his sugar giving ⅜, retaining ⅝ of product; contract has 12 years unexpired.  Average net income for five years, 1892-1896, $20,115.  Average yield per acre 6 tons.

We see no reason for lowering the valuation of the Tax Appeal Court and place the same at $168,450.

Waiakea Mill Company.   District of Hilo, Island of Hawaii.

Taxpayer's valuation ..................$640,000
Assessor's valuation ................... 710,000
Tax Appeal Court's valuation............ 675,000

Appeal by both parties.

Land of "Waiakea" leasehold 95,000 acres, 21 years unexpired.   5,000 acres available cane land; about 3,500 acres in use. Tonnage of sugar increased from 2,541 in 1887 to 6,410 in 1896. Has abundance of rain; has superior transportation and shipping facilities.

Detailed value of property as returned, $345,245.00; annual average dividends, 1887-1896, $112,200.00.

Gross receipts, 1896.................$408,189.88
Actual running expenses, 1896......... 235,261.64

Net profits to 1st January, 1897..$172,928.24

Capital stock $300,000.   No stock quotations.

We consider that the assessor's valuation is not too high and place the value at $710,000.

Hilo Sugar Company.   District of Hilo, Island of Hawaii.

Taxpayer's valuation ..................$700,000
Assessor's valuation ................... 750,000
Tax Appeal Court's valuation............ 725,000

Appeal by both parties.

Land, 4,295 acres fee simple, of which 2,400 is cane land; leasehold 5,117 acres, of which 1,600 is cane land.   Tonnage not in evidence.   For 1896, 7,216 tons.   Has abundance of rain. Has superior transportation and shipping facilities.

Detailed value of property as returned, $446,882; annual average dividends, 1887-1896, $165,500.

Gross receipts, 1896..................$463,122.84
Actual running expenses, 1896........ 265,259.10

Net profits to 1st January, 1897..$197,863.74

Capital Stock $500,000.   Stock sales in 1896, $180 to $190; par value $100.

We consider that the Assessor's valuation is not too high and place the value at $750,000.

Onomea Sugar Company.   District of Hilo, Island of Hawaii.

Taxpayer's valuation .................$825,000
Assessor's valuation .................... 936,619
Tax Appeal Court's valuation............ 875,000

Appeal by both parties.

Land, fee simple 5,399 acres; leasehold, 12,382 acres.   Cane land 3,956 acres fee simple, 1,443 acres leasehold.   Leaseholds of small pieces expire in 9 to 11 years.   Tonnage not in evidence. For 1896, 10,013 tons of sugar; crop has doubled since 1888. Abundance of rain.

Detailed value of property as returned $652,473.00; dividends (somewhat variable) annual average, 1889-1896, $81,534.29.

Gross Receipts, 1896.................$644,003.59
Actual running expenses, 1896........ 519,347.39
                                      _____
          Net profits to 1st January, 1897..$124,656.20

Capital stock $600,000.   No stock quotations.   An expensive plantation to run.   Profits in addition to dividends have been expended in enlarging plantation and in increasing general efficiency.   Have acquired fee simple of Paukaa Plantation, 7,811 acres in fee.

We consider that the Tax Appeal Court's valuation is not too high and place it at $875,000.

Pepeekeo Sugar Company.   District of Hilo, Island of Hawaii.

Taxpayer's valuation ..................$700,000
Assessor's valuation .................... 750,000
Tax Appeal Court's valuation............ 700,000

Appeal by Assessor.

Land, 12,061 acres fee simple.   Leasehold about 450 acres,

expires in from 5 to 8 years.   Cultivated in cane about 2,700 acres.   Tonnage increased from 2,105 in 1890 to 6,500 in 1896.

Dividends somewhat variable.   Annual average, 1890-1896, $82,500; rainfall sufficient.

Detailed value of property as returned, $455,056.

Gross receipts, 1896..................$402,521.58
Actual running expenses, 1896......... 214,082.29

Net profits to 1st January, 1897..$188,439.29

Capital stock $750,000.   Plantation sold in 1889 for $600,000. Stock sold in 1896 for $137.50, par value being $100.   Comparatively inexpensive plantation to run, the land being smooth.

We see no reason to raise the valuation made by the Tax Appeal Court and place it at $700,000.

Hakalau Plantation Company.   District of Hilo, Island of Hawaii.

Taxpayer's valuation ..................$625,000
Assessor's valuation ................... 700,000
Tax Appeal Court's valuation............ 700,000

Appeal by Taxpayer.

Land, 12,749 acres fee simple, of which 680 acres is cane land; about 9,850 acres leasehold, of which 3,630 acres is cane land.   Leaseholds expire in from 5 to 15 years.   Tonnage not in evidence.   For 1896, 7,675 tons.   Annual average dividends, 1890-1895, $101,666.   Rainfall sufficient.

Detailed value of property as returned, $246,041.

Gross receipts, 1896.................$463,486.27
Actual running expenses, 1896........ 311,793.22

Net profits to 1st January, 1897..$151,693.05

Foreign corporation.   Capital stock $1,000,000.

We place the valuation of the property in question at $650,000.

Hamakua Mill Company.   District of Hamakua, Island of Hawaii.

Taxpayer's valuation ..................$560,000
Assessor's valuation .................... 654,000
Tax Appeal Court's valuation............ 600,000

Appeal by both parties.

Land, 3,553 acres fee simple, of which 2,548 is cane land. Leasehold 1,515 acres, of which 1,414 is cane land, from 6 to 9 years unexpired.   Tonnage not in evidence.   For 1896, 7,330 tons.

Annual average dividends, 1886-1896, $75,980.   Rainfall not so great as in Hilo District.   Detailed value of property as returned $429,423.00.

Gross receipts, 1896.................$347,617.47
Actual running expenses, 1896........ 190,487.27

Net profits to 1st January, 1897..$157,130.20

Incorporated in 1896.   Capital stock $500,000.

We place the valuation of the property in question at $600,-000, the amount fixed by the Tax Appeal Court.

Paauhau Plantation Company.   District of Hamakua, Island of Hawaii.

Taxpayer's valuation ..................$632,172
Assessor's valuation .................... 800,000
Tax Appeal Court's valuation............ 700,000

Appeal by both parties.

Land, 834 acres fee simple, cane land.   3,166 acres leasehold, mostly cane land; leases expire from 6 to 13 years.

Dividends prior to 1892 not in evidence.   From 1892 to 1894 no dividends paid, spent in improvements.   For 1895, $140,000, 1896, $360,000.

Rainfall precarious, varies from 36 to 96 inches per annum, subject to occasional droughts.   No water for irrigation.

Tonnage not in evidence. For 1896, 10,967 tons.

Detailed value of property as returned $496,153.09.

Gross receipts, 1896.................$638,575.56
Actual running expenses, 1896........ 275,327.26

Net profits to 1st January, 1897..$363,248.30

Foreign corporation. Capital stock $1,000,000. Comparatively inexpensive plantation to run.

We do not find sufficient grounds for changing the valuation made by the Tax Appeal Court and place it at $700,000.

Union Mill Company. District of North Kohala, Island of Hawaii.

Taxpayer's valuation .................$149,771.29
Assessor's valuation .................. 175,000.00
Tax Appeal Court's valuation.......... 160,000.00

Appeal by both parties.

Land, 1,527 acres fee simple, of which 985 is cane land; leasehold 545 acres, of which 386 is cane land. Most of the leases expire within five years.

Detailed value of property as returned $149,771.29; annual average dividends, 1891-1896, $18,800. Plantation is in a dry district; rainfall lessening. Tonnage not in evidence. Average yield per acre 2.41 tons.

Gross receipts, 1896.................$109,770.82
Actual running expenses, 1896........ 70,347.26

Net profits to 1st January, 1897..$ 39,423.56

Capital stock $160,000. Grinds cane for others.

We reduce the valuation of the Tax Appeal Court to that of the taxpayer and place it at $149,771.29.

R. R. Hind (Hawi Mill). District of North Kohala, Island of Hawaii.

Taxpayer's valuation .................$210,444
Assessor's valuation ..................  325,000
Tax Appeal Court's valuation............  300,000

Appeal by both parties.

Land, 2,361 acres fee simple, of which 920 is cane land; 640 acres leasehold, of which 537 is cane land. Leases expire from 5 to 15 years.

Detailed value of property as returned $210,444. Annual profits previous to 1894 from $40,000 to $45,000; for 1895, $35,000; for 1896, $88,941.

Tonnage has varied from 1,250 to 2,881, 1891-1896. Average yield per acre 2.55 tons. Grinds cane for others. Plantation is in a dry district. Rainfall scarce and lessening. Has store, landing and small steamer.

Gross receipts, 1896....................$168,507
Actual running expenses................   79,566
                                        _____
        Net profits to 1st January, 1897....$ 88,941

We place the valuation of the property in question at $287,500.

Hutchinson Sugar Plantation Company. District of Kau, Island of Hawaii.

Taxpayer's valuation .................$625,000
Assessor's valuation ..................  750,000
Tax Appeal Court's valuation............  625,000

Appeal by Assessor.

Land, 19,500 acres fee simple, of which about 3,000 are in cane; leasehold about 38,000 acres, of which about 500 acres are in cane. Plantation is in a dry district. Rainfall variable, averages about 50 inches per annum.

Detailed value of property as returned $559,941. Has mercantile business and about 2,000 head of cattle. Runs three mills. Tonnage varied from 2,606 in 1890 to 8,931 in 1896.

Dividends not fully in evidence. Paid $85,000 in 1895 and $150,000 in 1896.

```
Gross receipts, 1896....................$486,156
Actual running expenses, 1896.......... 300,610
```

Net profits to 1st January, 1896....$185,546

Foreign corporation. Capital stock $2,500,000. 50,000 shares, par value $50. Stock sales variable in San Francisco. Sales 1896 from $20 to $28.50 per share.

We see no sufficient reason for increasing the valuation of the Tax Appeal Court and place it at $625,000.

Hawaiian Agricultural Company. District of Kau, Island of Hawaii.

(Judd, C.J., being a stockholder, took no part in this decision.)

```
Taxpayer's valuation ...................$538,900
Assessor's valuation .................... 649,250
Tax Appeal Court's valuation............ 538,900
```

Appeal by Assessor.

Land, 14,800 acres fee simple, of which 2,884 acres are in cane. Leasehold about 211,000 acres, of which much is valueless and about 1,164 in cane.

Plantation is in a dry district. Rainfall variable.

Detailed value of property as returned $501,763.25. Has cattle ranch with about 6,500 head of cattle. Tonnage not in evidence. For 1896, 6,950 tons. Grinds cane for others. Average annual dividends, 1881-1896, $61,325.

```
Gross receipts, 1896.................$469,621.26
Actual running expenses, 1896........ 275,720.87
```

Net profits to January 1, 1897....$193,900.39

Capital stock $500,000. Stock sold at $137.50 in 1896.

We see no sufficient reason for increasing the valuation of the Tax Appeal Court and place it at $538,900.

Waimanalo Sugar Company.   District of Koolaupoko, Island of Oahu.

>Taxpayer's valuation ...................$196,000
>Assessor's valuation .................... 265,465
>Tax Appeal Court's valuation............ 226,800

Appeal by Taxpayer.

Land, mainly leasehold, the Ahupuaa of "Waimanalo," and other small parcels in fee simple and leasehold.  1,670 acres in growing cane.  Relies partly on rainfall and partly on irrigation.  Water supply increased in past ten years through tunnel from adjoining land and by pumping.

Detailed value of property as returned $165,584.82.  Dividends 1890, $13,500; in 1891, $81,000.  No dividends since; ran in debt.  Tonnage not fully in evidence, 3,378 tons in 1895, 2,300 in 1896.  Machinery old.

>Gross receipts, 1896..................$182,084.50
>Actual running expenses, 1896........ 138,760.00

>Net profits to 1st January, 1897..$  43,324.50

Debt 1st January, 1897, $53,155.17.  Debt reduced in 1896 by $44,299.51.  Capital stock $252,000, par value $100.  Some stock sold in 1895 at $70.  A large block taken in 1896 under exceptional circumstances at par.

We see no reason to vary the valuation from the amount upon which the plantation paid taxes in 1896 and place the value at $196,000.

Ewa Plantation Company.   District of Ewa, Island of Oahu.

>Taxpayer's valuation .................$  850,000
>Assessor's valuation ................. 1,210,775
>Tax Appeal Court's valuation.......... 1,210,775

Appeal by Taxpayer.

Land, 4,211 acres leasehold, 43 years to run.  Has 3,442 acres in growing cane.  Depends upon irrigation by pumping from artesian wells.  Yield per acre exceptionally large.

Detailed value of property as returned $564,652.35. Tonnage not fully in evidence; for 1896, 12,113. Dividends paid in 1896, 30% on capital, $225,000. Average net profits for 5 years, 1892-1896, $148,187.62; for four years, 1893-1896, $207,650.73. Superior shipping facilities.

Gross receipts, 1896.................$756,347.38
Actual running expenses, 1896........ 477,114.85

Net profits to 1st January, 1897..$279,232.53

Capital stock $750,000; shares $100 par value. In latter part of 1896 small sales of stock at $190.

We find no reason for lowering the valuation of this property made by the Tax Appeal Court and place it at $1,210,775.

*Kinney & Ballou* for the plantations on Hawaii and Kauai and Waimanalo Plantation.

*A. S. Hartwell* for G. N. Wilcox.

*Thurston & Stanley* and *G. K. Wilder* for H. C. Austin, Assessor for Hawaii.

*Thurston & Stanley* for J. K. Farley, Assessor for Kauai.

*W. R. Castle* for Ewa Plantation Co.

*A. G. M. Robertson* for Jonathan Shaw, Assessor for Oahu, in Ewa Plantation case; *Thurston & Stanley* for Assessor in Waimanalo Plantation case.