THE HAWAIIAN SUGAR COMPANY *v.* J. K. FARLEY,
Tax Assessor.

APPEAL FROM TAX APPEAL COURT.

SUBMITTED JANUARY 2, 1901.     DECIDED JANUARY 28, 1901.

GALBRAITH AND PERRY, JJ., AND LORRIN ANDREWS, ESQ., OF
THE BAR, IN PLACE OF FREAR, C.J., DISQUALIFIED.

A valuation of $3,500,000. placed on the property of the Hawaiian
Sugar Company, for taxation purposes, for the year 1900, by the
Tax Assessor and approved by the Tax Appeal Court, is sustained
and the appeal of the company is dismissed.

OPINION OF THE COURT BY GALBRAITH, J.
(Perry, J., dissenting.)

The Hawaiian Sugar Company appealed from the decision of
the Tax Appeal Court of the Island of Kauai, approving a valua-
tion of $3,500,000. placed on its property for taxation purposes
for the year 1900 by the tax assessor. The appeal is taken from
the excess over $2,500,000., the amount at which the property
was valued the preceding year, although the return of the com-
pany for the year 1900 was for a less amount.

Under the law the property of this company, like all other
property in the Territory, is required to be assessed at its "full
cash value." The difficulty presented in this case is the correct
method to be pursued in arriving at this fact. The company
appeals to this court on the ground that the valuation placed on
its property is excessive. It is only fair to presume that there
was some one connected with the Hawaiian Sugar Company that
knew the "full cash value" of its property on the first day of
January, 1900. The record fails to show that any such witness

was produced by it either before the Tax Appeal Court, or at the hearing in this court.

The capital stock of the company is $2,000,000. divided into 20,000 shares of the par value of $100. Its real estate is all leasehold with thirty-nine years to run (except crown lands, area not given), 2,444 acres of which was under cultivation in 1899, and it has the privilege under its lease of greatly extending this area, upon the payment of fixed percentage of the sugar produced. It is shown that on January 2, 1900, $222.50 per share was offered for its stock, and $227.50 was asked. That in July, 1899, 2,000 shares of its stock were purchased at $225. to $240. per share, which were taken to San Francisco and made the basis of a $5,000,000 corporation, known as the Makaweli Sugar Company; that the par value of these shares was $50., and that they were selling in the open market for from $46. to $49. per share. The net profits of the appellant company

| | |
|---|---:|
| For the year 1897, were ..................... | $240,505.73 |
| For the year 1898, were ..................... | 508,850.86 |
| For the year 1899, were ..................... | 666,570.28 |

An average net yearly profit for said period of $471,955.62. The dividends paid for the year 1899 were 31 per cent, or 2 1-3 per cent less than one-third of the entire capital stock of the company.

Mr. Justice Frear, speaking for the Supreme Court of the Republic of Hawaii, said: "The tax in question is not an income tax, depending for its amount upon the income for the year preceding, but a tax on property, the earning power of which is one of the most potent factors in determining its value." 11 Haw. 238.

The earning power of the Hawaiian Sugar Company is certainly very great, and ample to justify the valuation placed thereon by the assessor, and approved by the Tax Appeal Court. This much is reluctantly admitted by the appellant's principal witness, the manager of the company.

Mr. Morrison, on cross-examination, after being cautioned by

counsel for the assessor to eliminate all speculative features from his estimates of the value of the stock, on January 1, 1900, testified as follows:

"A. I think a man is doing pretty well if he could sell for $300.

Q. What would you consider, if buying? .

A. I consider $200. a big price.

Q. For the man that sells?

A. If he buys it for $180. he is getting things on a good reasonable figure.   *   *   *

Q. Considering the dividends they are paying, do you consider $180. an excessive price for the stock?

A. I consider it a (fair) market price for the stock." (Page 39, Transcript of Evidence.)

The valuation placed on the property by the assessor, and claimed by the appellant to be excessive, estimates the stock at $175., five dollars less per share than the manager of the plantation swears is its fair market price. Under this evidence the assessor's valuation is $100,000. less than the fair market price of the property.

One ground urged by the appellant for considering this valuation excessive is that it is an increase of 40 per cent over that for the preceding year, and that the company only had 92 acres more of cane planted in 1900 than in 1899. It seems that in this position counsel assume that the valuation of the property for the year 1899 was a correct one. This assumption is denied by the assessor. And it seems that there are good reasons for believing that the valuation of this property for the year 1899 was under its "full cash value."

The appellant has failed to show that the valuation of $3,500,000., approved by the Tax Appeal Court, is excessive, and its appeal is therefore dismissed, and that said valuation for the year 1900 is affirmed.

*M. F. Prosser* and *W. O. Smith* for appellant.

*Holmes & Stanley* for Tax Assessor.

DISSENTING OPINION OF PERRY, J.

I respectfully dissent.

To the statement of facts contained in the foregoing opinion may be added the following concerning the property in question: Area cropped in 1897, 2,284 acres; in 1898, 2,352 acres, and in 1899, 2,440 acres. Yield of the plantation per acre, in 1899, 6.87 tons. Total production, in 1896, 11,400 tons; in 1897, 11,934 tons; in 1898, 14,800 tons, and in 1899, 16,205 tons. The unexpired term of the lease of the lands owned by the Government is seventeen years. The supply of water in the present main ditch decreased somewhat during the three years next preceding the assessment, but an abundant supply is available from other sources upon further outlay for ditches, etc. Assessment for 1898 was $1,171,000.; for 1899, $2,500,000. Dividends paid in 1897, $100,000.; 1898, $484,945.; 1899, $325,055. Average dividends for three years, $303,333., and for 1898 and 1899, $405,000.

In my opinion, the valuation of the property in question for the year 1900 should, upon the evidence, be placed at three million dollars.