## HAWI MILL & PLANTATION COMPANY, LIMITED, *v.* R. T. FORREST, TAX ASSESSOR.

## HIND PLANTATION COMPANY, LIMITED, *v.* R. T. FORREST, TAX ASSESSOR.

## HIND ESTATE (JOHN HIND, TRUSTEE,) *v.* R. T. FORREST, TAX ASSESSOR.

APPEALS FROM TAX APPEAL COURT, THIRD JUDICIAL CIRCUIT.

ARGUED DECEMBER 6, 1912.                    DECIDED DECEMBER 20, 1912.

ROBERTSON, C.J., PERRY AND DE BOLT, JJ.

TAXATION—*weight of decision of tax appeal court.*

In the supreme court a tax appeal occupies about the same position as an equity appeal. The presumption is that the decision appealed from is correct and the burden is upon the appellant to show wherein it is erroneous. Where most of the evidence is documentary, and comparatively little depends upon the credibility of witnesses the presumption may be more readily overcome than it would be in a case turning largely on the weight of testimony.

Hawi Mill & Plantation Co. v. Forrest, 21 Haw. 389.

SAME—*valuation reduced when too high.*

> The assessment of the property of Hawi Mill & Plantation Co., Ltd., as of January 1, 1912, by the tax appeal court at $1,200,000 held, upon the evidence, too high, and reduced to $1,100,000.

OPINION OF THE COURT BY ROBERTSON, C.J.

These appeals were brought by the taxpayer in each case from decisions of the tax appeal court of the third judicial circuit.

In the case of Hawi Mill & Plantation Co., Ltd., the company returned the aggregate value of its combined property as the basis of an enterprise for profit as of January 1, 1912, at the sum of $700,000. The tax assessor assessed the property at $1,300,000 and the tax appeal court fixed the valuation at $1,200,000. From the decision of that court the company appealed as to so much of the assessment as exceeded the sum of $800,000.

The argument of the case involved the question as to what weight should be given the decision of the tax appeal court, and counsel for the assessor point out that as such courts are usually comprised of business men living in the district in which the property is situated, and who have actual knowledge of the property, considerable weight ought to be accorded to their findings. In support of the contention that the burden is upon the appellant to show that the decision appealed from was erroneous, and that the valuation fixed by the tax appeal court will not be changed if it appears to be fair and just and was not based on a wrong theory or defective data, are cited the cases of *Tax Assessment Appeals,* 11 Haw. 235; *Tax Assessor* v. *Wilder,* 17 Haw. 425; *Tax Assessor* v. *Wailuku Sugar Co.,* 18 Haw. 422; and *In re Taxes Makee Sugar Co.,* 19 Haw. 331. In the first case cited it was said that "A tax appeal occupies about the same position as an equity appeal in this court," and reference was made to the case of *Cha Fook* v. *Lau Piu,* 10 Haw. 308, wherein it was said (p. 312) that "while great weight has always been given to the findings of fact of the judge who first heard the case, and this should be so, because he has seen and heard the

witnesses, this court has also felt at liberty to review carefully all the evidence sent up in appeal cases, and to form such conclusions upon them as seems proper." We think the language used in 18 Haw. 422, 424, was not intended to lay down a different rule than that which likened tax appeals to equity appeals. In cases turning wholly or largely on the credibility of witnesses, or on an inspection of the property, more weight naturally would be given. the findings of the court below than where the evidence is mostly documentary or consists principally of tables of figures and estimates. In the case at bar, except as to the testimony relating to the values of the several items of property which go towards making up the basis of the enterprise for profit, the evidence consists almost wholly of documents, statements and tables of figures. The presumption is that the decision appealed from was correct, and the burden is upon the appellant to point out wherein it was wrong, but the presumption in a case such as this may be more readily overcome than in cases depending to a greater extent on the credibility of witnesses and the weight of testimony.

In 1897 the Hawi plantation, then owned by Mr. R. R. Hind, was assessed at the sum of $285,500. (11 Haw. 252.) The report of the case shows, among other things, that there were 1457 acres of cane land which gave an average yield of 2.55 tons of sugar per acre, and nearly one-half of which was held under lease; that in seven years the output varied from 1250 to 2881 tons; and that the annual profits over a number of years varied from $35,000 to $88,941. In 1900 this property was valued at $265,000 upon a showing that the yield for 1899 had fallen to 1 1/5 tons of sugar per acre; that there would be no profit but a possible loss on the year's business; that the rainfall in the district was decreasing each year; that irrigation by pumping was an experiment, and that the additional lands were leaseholds held at high rental, and that it was problematical whether they would be a source of profit or loss to the plantation. The present company was incorporated in 1904 with a

paid up capital of $300,000. The stock is held by the family of the late R. R. Hind and there have been no sales of shares. The deputy assessor valued the separate items of property comprising the plantation at the aggregate sum of $1,120,441.55, while the company's manager valued the same at $606,289.55. The decision of the tax appeal court discloses no express finding on this point, but a fair valuation of the property based upon the separate appraisal of the different items would probably be somewhere between the totals given by the two witnesses. But the assessment of the combined property as the basis of an enterprise for profit requires that there be taken into account all facts and considerations which reasonably and fairly bear upon the value of the property as a whole including the gross receipts, running expenses and net profits of the enterprise.

The evidence shows that the company holds about 6121 acres of land; in fee simple, about 997 acres of which about 847 acres are cane land and the rest pasture; under lease from the Hind Plantation Co., Ltd. (which is controlled by the stockholders of the Hawi M. & P. Co.), 965 acres; under government leases 2099 acres, of which 1516 acres are subject to the homesteading withdrawal clause; under leases from other parties 1828 acres; and some small parcels belonging to the Hind Estate, for which no rental is charged, aggregating 234 acres. The government has notified the company of the proposed withdrawal and cancellation of two leases covering about 927 acres of land which is to be homesteaded. These are among the less desirable lands of the company. Whether the whole of this area has been under cultivation was not made clear, but there was evidence to the effect that the land is fit only for planting in cane so that if it should be so planted the company would be in a position to contract with the homesteaders for the grinding of their cane. The company now grinds the cane of an adjoining plantation and as consideration receives twenty-five per cent. of the sugar manufactured. The extent of the probable loss which may accrue to the company by reason of the cancellation

of those leases it is difficult to estimate upon the evidence now before us.   In 1911 there were 396 acres of cane land not cultivated, and this year, 784 acres.   It appears that since the incorporation of the company an irrigation ditch has been constructed, from which a supply of water is obtained, and the increased yields of the plantation are doubtless due to some extent to the improved water supply.   The testimony shows that 1569 acres of land in cultivation for the 1912 crop were being irrigated.   The company has superior shipping facilities, owning its own landing whereby it is enabled to receive supplies from and put its sugar into deep-water vessels.

The following table shows that the output of the plantation has steadily increased; that the cost of production also has increased; that the market prices of raw sugar have been favorable; and that the profits, the net result of the conflicting factors, have been large.

| Year. | Cultivated Area. Acres. | Crop. Area. Acres. | Crop. Tons. | Cost of Production. Tons. | World's Average Price per lb. | Net Profits . | Dividends. |
|---|---|---|---|---|---|---|---|
| 1905 | ...... | ..... | 3687 | ....... | 4.278 | $ 87,809 | $180,000* |
| 1906 | ...... | ...... | 4957 | ......... | 3.686 | 148,000 | 30,000 |
| 1907 | ...... | ...... | 5270 | .. ...... | 3.756 | 163,303 | 60,000 |
| 1908 | 2764 | 1620 | 6611 | $35.55 | 4.073 | 303,137 | 90,000 |
| 1909 | 2929 | 1616 | 6258 | 42.35 | 4.007 | 177,849 | 75,000 |
| 1910 | 3196 | 1587 | 7202 | 46.304 | 4.188 | 201,864 | 30,000 |
| 1911 | 3155 | 1762 | 7480 | 46.939 | 4.453 | 298,190 | 75,000 |

* Included other realizations than plantation profits.

The above figures would indicate that this property during the past few years has been under assessed.   The assessment of January 1st 1911 was $800,000.   The apparently conservative estimate of the company's manager of the output for 1912 was 7211 tons.   The profits over and above the amount paid out in dividends have been put partly into permanent improvements and partly invested in other enterprises.   The cor-

poration exhibit for 1911 shows among the assets of the company as of December 31, 1911, "Stocks and holdings in other companies, $524,808.07," and "Credit with agents, $280,-696.78." The average annual net profits for seven years were $197,164. The probabilities, so far as they can be judged, are against such favorable results in the coming years, and we think that the valuation of the tax appeal court was too high. Considering all the circumstances, those which make against the future prospects of this plantation as well as those which tend to a favorable outlook, we think a conservative valuation of the property would be $1,100,000. Upon the capitalization of profits basis this is at the rate of about 18 per cent., and that, considering the situation and prospects of the plantation, would seem to be fair and reasonable. The assessment is therefore fixed at $1,100,000.

As to the appeal of Hind Plantation Company, Limited. This company owns 965.82 acres of cane land in fee simple which it leases to the Hawi Mill & Plantation Company at the annual rental of $3600. It returned this land at the valuation of $17,000; it was assessed at $43,000; and the tax appeal court sustained the assessment. The land is worth more than eight times the annual rental. The valuation of less than forty-five dollars per acre for this land would seem not to be too high, and we find nothing in the record to overcome the presumption that the decision appealed from was correct. The decision is affirmed.

Hind Estate (John Hind, Trustee). In this case there were 234.24 acres of land, consisting principally of small remnants, returned at $1200, assessed at $3875, and the assessment was sustained by the court below. The assessment was at the rate of less than seventeen dollars an acre. What we have said in the Hind Plantation Company case is applicable here. The decision of the tax appeal court is affirmed.

*J. Lightfoot* for appellants.

*A. A. Wilder (Thompson, Wilder, Watson & Lymer* on the brief) for appellee.