Plaintiff filed no brief.

*C. F. Parsons* for defendant.

---

# IN RE TAXES HAWI MILL & PLANTATION COMPANY, LIMITED.

## No. 1304.

APPEAL FROM TAX APPEAL COURT THIRD CIRCUIT.

ARGUED APRIL 13, 1921.          DECIDED APRIL 20, 1921.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE DEBOLT IN PLACE OF EDINGS, J., ABSENT.

TAXATION—*value reduced when too high.*

The assessment of the property of the Hawi Mill & Plantation Company, Limited, as of January 1, 1920, by the tax appeal court at $1,500,000, held upon the evidence too high, and reduced to $1,433,170.

OPINION OF THE COURT BY KEMP, J.

The Hawi Mill & Plantation Company, Limited, in its tax return for 1920 placed a valuation of $600,000 upon

its property which consists of various kinds combined to form the basis of an enterprise for profit. The tax assessor assessed it at $1,600,000 and the company appealed to the tax appeal court for the third judicial circuit, where after a hearing that court fixed its value at $1,500,000. From the decision of the tax appeal court the company has appealed as to so much of the assessment as exceeds $1,000,000. In other words, the company although returning its property as of the value of $600,000 now admits it to be worth $1,000,000. The taxation of the property of this plantation has been the subject of several decisions of this court. At the outset we notice as did the court in each of the other appeals that there has been no sale of stock of this company neither is it quoted in the stock exchange. It is therefore impossible to consider the market value of the stock of the company as one of the tests of the value of its property. In 1912 in an appeal from the decision of the tax appeal court fixing a value of $1,200,000 upon the property of this company this court fixed its value at $1,100,000. (21 Haw. 389.) From the decision upon that appeal it appears that the company owned lands which it held in fee simple amounting to 997 acres; that it leased from the Hind Plantation Company, Limited (which is controlled by the stockholders of the Hawi M. & P. Co.), 965 acres, from the Hind estate 234 acres, from the government 2099 acres and from other parties 1828 acres. It also appeared that for the period of seven years just prior to 1912 the average annual profits of the company had been $197,164. This court concluded that a capitalization of those profits at about 18% would be a fair valuation and thus arrived at a valuation of $1,100,000 after having taken into consideration all other circumstances, such as rainfall, land tenure, etc., testified to before the tax appeal court. In making this reduction from the valuation fixed by the tax appeal

court this court said that the probabilities so far as it was able to judge them were against such favorable results in the years to come. At the hearing before the tax appeal court at that time the assessor had estimated the value of the tangible taxable assets of the company at $1,120,441 while the company contended that its tangible taxable assets were only $606,289. The court concluded that their real value was probably somewhere between those two figures but did not make a specific finding as to their value.

Again in 1915 this company appealed from the finding of the tax appeal court fixing the value of its property as an enterprise for profit at $900,000. In that case it appeared that the physical properties of the company were very much the same as they were in 1912 but the profits for a period of seven years just preceding 1915 averaged only $132,297 annually. Again considering all of the circumstances this court thought that a capitalization of the profits at a rate a little less than 15% to be a more normal rate than that allowed in the prior appeal and upheld the decision of the tax appeal court fixing a value which that rate justified. (23 Haw. 46.)

In the present hearing before the tax appeal court it was agreed that the value of the company's tangible taxable assets outside of its lands held in fee and leased from the government and the growing crops was $360,581.57. As to the value of these lands and the crops there is a wide difference of opinion between the company and its witnesses and the assessor. The taxpayer called two witnesses who testified to land values. Their estimates are quite close together, one placing the value at $80 per acre on all fee simple lands owned by the company including cane land, waste land and pasture, while the other placed a valuation of $85 per acre on the same lands. The assessor estimated their value at $150 per acre. The

company owns 1055.66 acres in fee simple. At $85 per acre the fee simple lands of the company are worth $89,731.10. At $150 per acre they are worth $158,349. The taxpayer valued them at $40,000. In addition to the fee simple lands owned by the company 1516 acres are leased from the Territory on general lease for a period of years upon which no value was placed by the taxpayer. Section 385 R. L. 1915 provides in effect that the value of general leases of public lands for the purpose of taxation shall be taken to be the value of the fee of the land demised. The validity of this statute was upheld by this court in *In re Taxes Waiohinu Agr. Co.*, 23 Haw. 621. If this acreage be added to the 1055.66 of fee simple lands, and assuming them to be of the same quality as the lands owned in fee simple and worth $85 an acre, the two would be worth $218,591, and at $150 per acre worth $385,749. The taxpayer's witness, its present bookkeeper, placed a valuation of $338,745 upon the growing crops notwithstanding the company returned them at $150,000. Mr. Shipman, the assessor, used the same method of estimating the value of crops that was condemned in the case of *In re Taxes Waiakea Mill Co.*, 25 Haw. 628. We therefore leave out of consideration his estimates. The tax appeal court made no separate finding as to the value of the lands or the crops. If we accept the testimony of the company's witnesses entirely the tangible assets of the company will be found to have a value of $917,917.57. Substituting Mr. Shipman's estimate as to the value of the lands for those of the company's witness we arrive at a value of $1,085,075.65.

Another line of evidence was the recent assessments of this property. For 1919 it was assessed at $1,325,000; for 1918 at $1,300,000 and for 1917 at $1,100,000. From none of these assessments did the company appeal. The Territory also showed by the reports of the Honolulu

Stock & Bond Exchange that the stocks of practically all sugar companies of the Territory listed had very materially advanced during the year 1919 and on December 31, 1919, showed an average increase in price over December 31, 1918, of more than 50%. Besides Mr. Austin, the former bookkeeper of the company and present manager of the Homestead Plantation in the same district, gave it as his opinion that the conditions on this plantation on January 1, 1920, were at least 10% more favorable than they were on January 1, 1919. The tax appeal court apparently gave more consideration to the capitalization of profits than to other circumstances although it states in its opinion that all the circumstances bearing upon the valuation were considered.

At the hearing before the tax appeal court counsel for the parties agreed that the profits for the four years last past should be used as the basis for the capitalization of profits. According to the testimony of the bookkeeper for the company the average profit from taxable assets for the four years amounted to $214,975 annually. This profit capitalized at the same rate approved by this court in 1915 (a little less than 15%) would give a valuation of approximately $1,450,000, and at exactly 15% would give a valuation of $1,433,170. Of the two witnesses for the taxpayer one expressed the opinion that a capitalization of profits at 20% would be a fair rate. This would give a value of $1,074,875. The other thought that 18% would be a fair rate. This would give a value of $1,194,-309. The assessor expressed the opinion that if the profits were taken for a period of eight years instead of four 12% would be a fair rate of capitalization. He testified that for the eight years prior to January 1, 1920, the average annual profits of the company had been approximately $197,000 which capitalized at 12% would justify his assessment. It is undoubtedly true that an eight-year

period is a safer period to use for the capitalization of profits than the one agreed upon in this case although there is only a difference of about $17,000 in the average for the eight years and the average for the four years. We know of no case where so high a rate of capitalization as 20% has been approved and very few where as high a rate as 18% has been used. In some cases this court has approved a capitalization of profits at as low a rate as 12% but where that has been done the taxpayer was operating under more stable conditions than this company enjoys.

On the whole we think that the evidence now before us shows no very material change in the general conditions confronting this company since 1915, but both its tangible property and net income have increased. It owns a little more land in fee simple than it did then, having purchased 102 acres about three years ago, and has less by about 500 acres under lease from the government. The lands leased from the Hind Plantation Company, Limited, and the Hind estate have remained about the same. The probability of reduced profits which this court thought in 1912 confronted the company did not materialize. On the contrary the net profits have increased notwithstanding the increased cost of production and the uncertain climatic conditions. Mr. Austin, who for years was an employee on this plantation, testified that "If we could figure on a definite rainfall say for five or six months it would be the finest plantation on the islands."

Considering all the circumstances which make against the future prospects of this plantation as well as those which tend to a favorable outlook we think that a capitalization of its profits at 15% will show a fair and reasonable valuation. The assessment is therefore fixed at $1,433,170.

Syllabus.

*W. L. Stanley* (*Smith, Warren & Stanley* on the brief) for the taxpayer.

*J. B. Lightfoot* for the assessor.