## MARY ATHERTON RICHARDS *v.* CARL ONTAI, JAMES ONTAI AND HENRY ONTAI.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED MAY 11, 1909.     DECIDED MAY 27, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

LANDLORD AND TENANT—*construction of lease.*

Under a lease the material portions of which are set forth in the opinion, it is held that the grant to the lessee includes all of the flow of an artesian well on the excepted premises other than water sufficient for the excepted buildings and grounds in the condition in which they were at the date of the lease.

Richards v. Ontai, 19 Haw. 451.

EVIDENCE—*parol evidence to explain contract.*

Acts and declarations of the parties prior to or contemporaneously with the execution of a lease are inadmissible in aid of its construction.

ID.—*practical construction.*

Practical construction of a lease is inadmissible to show its meaning where its language is clear and unambiguous.

ID.—*scintilla.*

A mere scintilla of evidence is insufficient to support a finding.

CONTRACTS—*meeting of minds.*

Certain letters held not to constitute a contract, because the minds of the parties did not meet.

ESTOPPEL—*reliance necessary.*

There is no estoppel when the party claiming it did not rely upon the alleged representation and was not misled by it.

CUSTOMS AND USAGES—*sufficiency of evidence of.*

The evidence in this case held insufficient to support a finding of a custom, binding upon individuals in the absence of a contract, that compensation for the use of water be paid semi-annually in advance.

### OPINION OF THE COURT BY PERRY, J.

This was an action of assumpsit brought to recover $625 alleged to be due by the defendants to the plaintiff for rent under a certain lease of premises known as the Kauluwela Lodgings situated in Honolulu. The defendants by their answer admit that the rent accrued against them and plead by way of set off a claim in the sum of $1090.32 for the use of water from January 1, 1908, to July 1, 1908, furnished by the defendants to the plaintiff for certain laundries erected by the plaintiff upon a piece of land known as the park. The verdict was for defendants in the sum of $246.50. Plaintiff excepted.

The main issue in the case is whether the water for the use of which compensation is claimed in the set off was granted in the lease to the lessees or reserved to the lessor.

The lease demises "all that portion of land on Vineyard street, Kauluwela, known as Kauluwela Lodgings, (two and a half acres more or less) with the buildings and improvements thereon excepting the buildings and grounds here following:— The Kindergarten Building and its yard and grounds; the Cottage and grounds now occupied by Mr. Poepoe; the entire building containing the Dispensary and the Hale Aloha; the building containing the swimming tank and the vacant lot known as the Park." Later in the instrument the following clauses are found:

"And it is further understood and agreed that said parties of second part, their executors, administrators or assigns shall have the right into and the sole ownership excepting as inhabited" (inhibited) "by the provisions of this lease, of all of the water upon said premises and said parties of the second part, their heirs, administrators or assigns can dispose of said water either by sale thereof if they so desire within the term of this lease, so that no injuries shall accrue to the premises or its water rights, nor can this water privilege of water rights be sold, transferred or assigned to any other parties or persons or corporations or co-partnership without the written consent of the party of the first part, her heirs, executors, administrators or assigns or legal representatives.

"And it is further understood and agreed that all and any sums of money that comes from the sale of water shall be the sole property of the parties of the second part, their heirs, administrators, executors and assigns, and said parties of second part shall have the right of way for laying pipes through that part of the premises known as the Park without let or hinderance, they not committing waste in the laying of said pipes and to sell said water excepting that reserved herein, when and to whom they please."

Undisputed evidence showed that at the date of the execution of the lease the only water on the premises, demised or excepted was that coming from an artesian well situated on the vacant lot known as the park. To construe these provisions as securing to the lessees merely the water on the demised

premises, as contended for on behalf of the plaintiff, would be
to render the admitted grant of some water meaningless and
ineffectual.   It is unnecessary to do so.   We think that the
ordinary reading of these and the preceding provisions requires
the construction that the water granted is that to be found
upon any portion of the premises described earlier in the lease,
whether demised or excepted.   While the language used is
susceptible of improvement, it clearly expresses the under-
standing and intention of the parties that to the lessees should
belong for the term of the lease all of the water on the prem-
ises subject only to the reservations and limitations in the in-
strument stated.   The lessees shall have "the sole ownership
of all of the water" is the clear statement which the parties
subscribed to.   The succeeding declaration that the lessees "can
dispose of said water * * * by sale thereof if they so desire"
even though qualified by the requirement of the lessor's written
consent to any sale of "this water privilege of water rights"
emphasizes the fact that the intent of the parties was as here
stated.   The same may be said of the express agreement that
all proceeds of the sale of water "shall be the sole property"
of the lessees and that the lessees "shall have the right of way
for laying pipes" through the park.   This right of way was
necessary to the lessees in order to obtain water from the well
and perhaps also to render practicable sales of water for use
on property situated in the vicinity of the park.

The only clause limiting the quantity of water thus granted
to the lessees is that appearing at the end of the lease and
reading as follows:   "It is agreed moreover that the party of
the second part shall supply to the party of the first part free
of charge all water required for buildings and grounds ex-
pressly reserved under this lease."   The plaintiff's contention
is that under the lease the lessor was entitled to as much water
as was at the date of the lease or should be at any time there-
after required for the excepted premises, provided only that

such use did not interfere with the use by the defendants of water for tenement purposes or for the permitted assigns of the defendants. We cannot so construe the lease. The provision last quoted,—and there is no other reserving or excepting water to the lessor—secures to the lessor water sufficient for the excepted buildings and grounds. The standard of measurement is the requirement of the excepted property at the date of the lease. The parties are presumed to have made their contract with reference to conditions as they existed at the time. It is apparent from the lease as a whole that they believed that the supply of water from the well was sufficient to meet the requirements of the excepted property, and those of the demised property, and that a surplus would still remain for possible sales by the lessees. The use of the word "buildings" in the clause reserving water to the lessor is significant. The water reserved was such as would be sufficient for the buildings reserved, that is to say, the buildings then existing, and not for additional buildings erected where none existed at that time. As will appear hereafter it is unnecessary to decide at this time whether the plaintiff is entitled to use on other property the water at the date of the lease used or required for any particular portion of the excepted premises.

A number of the exceptions raise the question of the correctness of rulings excluding evidence of acts and declarations of the parties made prior to, contemporaneously with and subsequent to the execution of the lease and tending to show that the parties intended and understood the provisions of the lease concerning water to mean what the plaintiff now contends that they mean. In so far as such evidence related to acts and declarations made prior to or at the time of the execution of the lease it was not admissible because the writing is deemed to express the agreement of the parties as finally concluded between them; and the remainder of the evidence so offered is likewise inadmissible because the language of the instrument

under consideration is clear and unambiguous. Where the
latter is the case there is no room for the application of the
rule as to practical construction by the parties. It may be
added that evidence tending to show the physical condition of
the premises at the date of the lease was freely admitted at the
trial, and correctly so.

It is further contended that the trial court erred in exclud-
ing evidence tending to show a contract in writing between the
parties fixing the amount payable by the plaintiff to the de-
fendants for the use of the water at $15 per room per year.
The undisputed evidence showed that about the month of
August, 1907, the plaintiff began the construction upon the
vacant lot known as the park of two wash houses containing
twenty-two rooms, and thereafter completed the same, and that
in all matters relating to these laundries as well as to the
leased property generally, the plaintiff's husband, Theodore
Richards, acted for her. The writings excluded consist of
four letters. In the first of these dated August 1, 1907, and
addressed by Richards to Ontai Brothers the plaintiff, referring
to her purpose to build the laundries, offers the lessees for
water to be supplied from the artesian well to the twenty-two
laundries payment at the rate of $15 per year per house, "such
sum to be paid quarterly in advance during the life of the
present leases (ten years) with the different companies rent-
ing the wash houses," making the offer conditional on main-
tenance of the existing lease, and adds the further condition
that the lessees will not undertake to sell any more water with-
out consultation with the lessor and that payment is to be made
for each room for the time only that it is occupied. Under
date of August 2 a letter signed by Carl Ontai was sent to
Richards in which the latter's offer contained in the letter of
August 1 is recited in detail. The writer states that the offer
is accepted but adds another term, "that the washmen be
allowed to cut the grass in the boys' field free of charges dur-

ing the presence of existing leases (ten years.)" On August
6 Richards wrote to Carl Ontai saying that the clause relative
to the grass "is inadmissible in any agreement between us."
No offer to prove any written reply to this last mentioned
letter was made. The only other letter offered in evidence
was one dated August 31, 1907, addressed to Ontai Brothers
by Richards in which the latter says in part:

"Secondly, I am going to live up to my agreement and pay
as expressed in my letter of August 1, and pay you water
rate on the laundries occupied (although by the terms of the
lease I have a perfect right to the water without payment) at
least for a time depending entirely upon our relations other-
wise, but the above is conditioned upon my right to have all
such payments apply to the debts of Carl Ontai to myself and
Mrs. Richards until such debts are entirely wiped out. Thirdly,
I am compelled to warn you that I shall expect any one who
occupies my place as a tenant to live up to the laws of the land
of which matters I have spoken before."

These letters standing by themselves do not in our opinion
constitute a contract. They fail to comply with the ordinary
requirement that there must be a meeting of the minds of the
parties. To the offer of August 1 Ontai proposed a new term.
That new term was rejected by Richards and no answer, as
far as the writings go, was ever made to such rejection. This
view is emphasized by the contents of the letter of August 31.
The terms there proposed were materially different from those
expressly stated in the earlier letters. The duration of the
arrangement there suggested was to depend entirely "upon
our relations otherwise," whatever that may have meant, and
not upon the definite term of ten years as suggested in the
earlier letters, and was to depend further upon Ontai's "living
up to the requirements of the law of the land."

Plaintiff also contends that prior to the letter of August 1
Richards and Carl Ontai had entered into an oral contract on
the subject of water rates. While some evidence was adduced
or offered of talks between these two men on the subject, the

talks constituted at best merely a part of the same negotiations. The two men evidently regarded the talks as indefinite or incomplete and substituted for them the series of letters already referred to. Under these circumstances no finding of a contract can be predicated on such evidence.

Mr. Richards, in the course of his testimony relative to the letter of August 6, 1907, and in reference to the cutting of grass on the boys' field, stated that Carl Ontai had some time subsequent to that date said "it is all right." Passing for the moment the questions of the effect of an oral acceptance of the contract as modified by the letter of August 6, and of the authority of Carl Ontai to bind his brothers in the matter, this statement might at first sight seem to be some evidence tending to show such acceptance. We believe, however, that the remark must be regarded as a mere scintilla, insufficient under the circumstances about to be mentioned to support a finding of acceptance. It stands by itself. Following this statement the same witness, Richards, made a number of direct and unequivocal statements, which are undisputed upon the record, to the effect that during the whole period commencing with some time between August 6 and August 31, 1907, and continuing to and including the day of the trial his belief and position had been that the water from the artesian well needed for the laundries was the property of the plaintiff to be used as she pleased without compensation to the Ontais; that he (Richards) would "pay him" (Ontai) water rates "as long as he maintains those relations with me which are understood between us; that I wanted him to hold up his agreement with me or he need not expect $15;" that "I told him if he did not live up to his agreements with me that he need not expect the continuation of my payment of $15;" that prior to the 31st of August, 1907, he (Richards) had convinced himself that he "had a right to take the water from the well for the wash houses without any permission or consent of On-

tai;" that at the time of writing the letter of August 31 "I had looked up the lease and arrived at the conclusion that I have arrived at now, that I had rights but could waive them if I wished to and could at any time cease to pay Ontai if he did not live up to his agreement with me with reference to the Kauluwela Lodgings;" that any payment by him (Richards) of water rates to Ontai was "a gratuity;" that the reason that he did not pay any water rates after December, 1907, was that they had not "lived up to their agreements;" that the payment of water rates would continue only as long as the "moral status of the Kauluwela Lodgings was correct," "I put that in definitely;" that he had refused to pay water rates for the period succeeding December, 1907, because he owed Ontai nothing for the water since he had the right to it under the original lease. There were other parts of Richards' testimony to the same effect and no evidence from any other source to contradict this. Upon this state of the evidence we could not uphold a finding, based upon the scrap of evidence quoted, that a contract in the terms attempted to be arranged by the letters of August 1, 2 and 6, was concluded.

Even if, however, it could be held that the scrap of evidence under consideration is not a mere scintilla but is sufficient to support a finding that the offer framed in the three letters was orally accepted by Carl Ontai, still the undisputed evidence would require a finding, and permit of none other, that the contract as so reached, partly in writing and in part orally, was repudiated and cancelled by Richards as early as August 31, 1907; that such cancellation was concurred in by Carl Ontai and that both parties proceeded thereafter as though there had been no contract.

Nor is the situation altered by the evidence relating to the water rates for November and December, 1907. Evidence was offered tending to show that Richards credited the sum of $55, being the total of water rates for November and December,

1907, at $15 per year per laundry, on a note due by Carl Ontai to plaintiff, and that Carl Ontai gave Richards a receipt for the amount as water rates for the two months. Assuming, that which there is no evidence to show, that Carl's brothers had knowledge of this payment and ratified it, they were, nevertheless, at liberty to charge a higher rate for water thereafter taken, just as Richards was at liberty to terminate the taking of water.

Reliance is finally placed by the plaintiff upon the theory that even if technically no contract was reached between the parties the defendants are now estopped from claiming that there was no contract for the reason that, as it is contended, the defendants through Carl Ontai led the plaintiff to believe that she would have the water at the $15 rate and stood by, in silence, with knowledge that she was erecting costly improvements upon the strength of that representation. No evidence, however, was adduced or offered upon which a finding of estoppel could be based. Had the question been left to the jury and had a finding of estoppel thereupon been made it would have been the duty of the court to set aside such finding for lack of evidence. Assuming for the purposes of this point that any representations were made as claimed by Ontai to Richards, there is no evidence that Richards relied upon such representations or was misled by them. Richards himself was a witness in the case and gave no testimony to the effect that he had been so misled or that he had in erecting the buildings relied upon anything said or done by Carl Ontai. On the contrary, as already appears in part from the quotations, his evidence was unqualifiedly to the effect that while in the days of planning and perhaps in the early days of the construction of the laundries he was doubtful as to the plaintiff's right under the lease to the water he convinced himself prior to August 31, 1907, that the water was the plaintiff's and that she was under no obligation to pay the Ontais for it. Upon

the undisputed evidence, as well that given by Richards as that given by other witnesses in the case, the only finding possible upon this subject is that the erection of the buildings was not undertaken or completed in reliance upon any agreement or representation by the Ontais or any of them to furnish water for any specified length of time at a given rate or upon any other representation by them.

Under the terms of the lease and in the absence of any contract to the contrary the plaintiff is liable to the defendants for the reasonable value of any water taken by her for the laundries in excess of the quantity required for the excepted buildings and grounds as they existed at the date of the lease. The trial judge instructed the jury to award the defendants compensation for any water so used in the laundries during the period named in the set-off in excess of that to which the park itself was entitled. This was not error because there was undisputed evidence to support a finding that during the whole period named in the set-off the excepted premises other than the park had been using all of the water which it customarily used and which it required. Carl Ontai testified to the number, size and use of the pipes leading from the artesian well at the date of the lease including a statement that a certain pipe which he described at that time was laid to and supplied all the property known as the Camp, and consisting of the swimming tank, Hale Aloha, Kindergarten Building, Poepoe Cottage and Dispensary, and further testified that at the date of the trial the same arrangement of pipes leading from the well and supplying the excepted premises just mentioned still existed. This was sufficient to justify the inference by the jury that water flowed through such pipes during all of that period and that the excepted premises other than the park received the required supply of water. The supply, then, received by the excepted premises other than the park during that period being of the required quantity and constant, it was correct to give the jury the instruction above mentioned.

Plaintiff's declaration was filed April 20, 1908, and the set-off on May 23, 1908. Under the instructions of the court the allowance of water rates to the defendants was for the period of six months ending July 1, 1908, such instruction having been given on the theory that the evidence justified a finding that it was the custom of the country that water rates be paid for a period of six months in advance. The only evidence on this subject was that payments of water rates to the government of this Territory are paid in advance once every six months, and that one of the witnesses once paid to an individual named Young similarly in advance. This evidence is insufficient in law to support a finding of a custom such as is contemplated by the rule invoked by the trial court. The payments to the Territory were made in pursuance of a statute requiring semi-annual payments. It is obvious from the record that the jury arrived at its verdict of $246.50 in favor of the defendants by finding that the water used in the laundries was of the value of $80 per room per year and that the water required for the park in the condition in which it was at the date of the lease was $17 a year, both of these being valuations amply supported by the evidence. How much of the amount awarded the defendants was awarded for the period following the date of the filing of the declaration is susceptible of computation.

Such of the remaining exceptions as were not abandoned and are not herein otherwise disposed of need not be referred to in detail. We find no error in the rulings to which they relate.

The exceptions to the rulings and instructions on the subject of the custom referred to are well taken and a new trial will be ordered unless the defendants shall within five days from this date remit the amount which under this opinion was erroneously included in the verdict.

*E. C. Peters* and *A. Lewis, Jr.* (*Smith & Lewis* on the brief) for plaintiff.

*J. A. Magoon* for defendants.