## MARY A. RICHARDS *v.* CARL ONTAI, HENRY ONTAI AND JAMES ONTAI, DOING BUSINESS UNDER THE NAME OF ONTAI BROTHERS.

SUBMISSION UPON AGREED FACTS.

ARGUED DECEMBER 17, 1910.          DECIDED DECEMBER 29, 1910,

PERRY AND DE BOLT, JJ., AND CIRCUIT JUDGE COOPER
IN PLACE OF HARTWELL, C.J.

LANDLORD AND TENANT—*liability for sewer rates.*

> Under a lease the lessor agreed to pay "the taxes levied" on and the lessees "all other charges" of the demised premises. Held, that sewer rates are payable by the lessees.

Richards v. Ontai, 20 Haw. 335.

ACTIONS—*splitting of.*

> Judgment in an action of assumpsit for instalments of rent un-
> der a lease bars an action for the amount of sewer rates which
> accrued during the same period and which the lessees by the same
> instrument obligated themselves absolutely to pay. The right of
> action in such a case is single and indivisible.

LANDLORD AND TENANT—*construction of lease.*

> An agreement by lessees to "supply" to the lessor "free of
> charge all water required for buildings and grounds expressly
> reserved under this lease," construed, under the circumstances of
> the case, to require the lessees to pump water sufficient for the
> buildings in the same manner that it was being furnished at the
> date of the execution of the lease.

CONTRACTS—*assignability.*

> The lessees' rights under a letter quoted in the opinion held to
> be non-assignable.

### OPINION OF THE COURT BY PERRY, J.

This is a submission under R. L., Sec. 1748, upon an agreed
statement of facts. On January 21, 1907, the plaintiff as lessor
and the defendants as lessees executed a lease of certain prop-
erty known as the Kauluwela Lodgings for a term of fifteen
years at a rental of $1500 per year payable quarterly. The
demised property was at that time and ever since has been con-
nected with the government sewer system. The sewer rates,
with penalties and interest which have accrued since the date
of the lease, remain wholly unpaid. The lease provides, inter
alia, as follows: "It is further agreed  *  *  *  that the
lessor  *  *  *  shall  *  *  *  pay the taxes levied on said
premises without recourse to" the lessees. "And it is further
*  *  *  agreed  *  *  *  that the lessees shall pay all other
charges of the hereby leased premises and meet all require-
ments of the board of health at their own cost and expense."

The first question submitted is whether the lessor or the
lessees are liable under the terms of the lease to pay the sewer
rates. In our opinion the liability is upon the lessees. Sewer
rates are not taxes within the ordinary meaning of the term
and are not usually understood to be taxes. "Taxes are the

enforced proportional contributions from persons and property levied by the State by virtue of its sovereignty for the support of government and for all public needs." Hamilton, Special Assessments, Sec. 36. They are levied irrespective of whether or not the persons or the property assessed receive any special benefit or consideration for the levy. Whatever may be said of the fact that under our laws and under the rules and regulations of the board of health an occupant of a city lot, using it for certain purposes, may not dispose of the sewerage into a cesspool upon his premises, connection with the sewer and payment of the resulting rates are, nevertheless, usually regarded as voluntary. The rates need not be paid unless the property owner or occupant requests that his premises be connected with the public sewer. The payment of rates is in consideration of the special use and benefit which the owner derives from the public property. In undertaking to pay "taxes" the lessor, therefore, did not undertake to pay for sewer rates. The term "other charges," on the other hand, is sufficiently broad to include expenditures for the use of the sewer as well as expenditures for other purposes which are a burden upon the demised property. The intention of the parties is evident that the lessor was to bear the taxes and that all other expenses of the property were to be met by the lessees.

On April 22, 1908, the lessor brought an action of assumpsit against the lessees for $625, being a balance of rent due under the lease from January 3 to July 3, 1908, and recovered judgment. The second question is whether that judgment is a bar to the recovery by the plaintiff of that part of the sewer rates now in controversy which accrued prior to the date of the institution of the action, the defendants contending that the claims for rent and for the amount of the sewer rates constitute a single, indivisible cause of action and the plaintiff that they are separate causes of action and that the right of action for the sewer rates had not accrued in April, 1908, because plaintiff had not at that time paid the rates to the Territory.

"While the general principle is undeniable that a former judgment on the same cause of action bars a second action between the same parties, it is not always easy to determine when the causes of action are identical or what is to be deemed a single or entire demand within the authorities" against splitting. *Perry* v. *Dickerson,* 85 N. Y. 345, 348. In the case at bar the lessees' promise was, not to indemnify the lessor in the event of the latter being compelled to pay the rates, but to pay them in any event. The undertaking was absolute to make the lessor's debt that of the lessees and the duty was to pay the rates when under the law they became due and payable to the Territory. Under these circumstances a right of action accrued in favor of the lessor upon the lessees' failure to pay at the appointed time and that, too, without any prior payment by the lessor to the Territory. The payments agreed to be made for sewer rates and expenditures caused in compliance with board of health regulations, like similar payments for taxes, are in the nature of rent for the use of the demised premises. Upon the lessees' failure to pay each instalment, it becomes at once a debt by them to the lessor, recoverable in the same manner as the monthly or annual instalments of rent reserved under that name. The mere fact that the amounts of the sewer rates or other charges are not ascertained at the date of the lease does not alter the principle. That is certain which can be made certain. Nor is the rule rendered inapplicable by the fact that under our statute the occupant or lessee is liable to the Territory jointly and severally with the owner. (R. L., Sec. 1038.) The parties must be presumed to have been aware of this provision when they executed the lease. Their contract was absolute and unqualified that the lessees should pay the rates and their object obviously was to protect the lessor and her property from the liability and the lien imposed by the law. The lessees' statutory liability to the Territory was to their minds immaterial.

On the subject of the promisee's right of action against the

promisor immediately on the latter's failure to perform an absolute promise to pay a debt due by the former, without requiring prior payment by the promisee, the authorities are, as far as we are aware, in entire accord. "Upon the lessee's neglect to pay" (taxes as provided in a covenant in the lease), "a cause of action at once accrues to the lessor, and he may either pay the tax and sue the lessee for the amount, or may sue without first so paying it himself."—1 Taylor, L. & T., Sec. 399.

"It is urged that the plaintiff cannot recover because she has not paid the assessments. The claim is made relying on the rule, as to principal and surety, that a surety has no right of action against his principal in respect to a debt for which he is surety until he has paid the debt for his principal. A different rule is applicable here; that, wherein one party agrees not to be surety for, but to absolutely pay the debt of, another, so that, as between the two, such party is primarily liable. We said in *Stout* v. *Folger,* 34 Iowa, 71, that 'the authorities agree that, upon an undertaking to pay a debt due a third person, the plaintiff may maintain an action without showing that he has paid the debt.' "—*Vorse* v. *Marble Co.,* 104 Ia. 541, 545, 546.

"Nor is it necessary that the plaintiff should pay the tax to the city to entitle her to maintain this action. The promise is not one of indemnity against the tax, but a promise to pay it."
—*Richardson* v. *Gordon,* 188 Mass. 279, 281.

"The covenant is broken when the defendant neglects to pay taxes or assessments duly imposed. The defendant is not at liberty to say that it is the debt of the plaintiffs; let them first pay it, and I will then pay them. It is his own debt, made so by the terms of his covenant."—*Trinity Church* v. *Higgins,* 48 N. Y. 532, 535-538.

See also 24 Cyc. 1079, 1080; *Fontaine* v. *Lumber Co.,* 109 Mo. 55, 59, 60 (18 S. W. 1147, 1148); *Port* v. *Jackson,* 17 Johns. 238, 244, 246; *Ham* v. *Hill,* 29 Mo. 275, 278, 279; *Stout* v. *Folger,* 34 Ia. 71, 74, 75; *Hand* v. *Suravitz,* 148 Pa. St. 202, 207, 208; and *Broadwell* v. *Banks,* 134 Fed. 470.

The lessor, then, had, at the date of the commencement of the action for the other portion of the rent, a right of action against the lessees for the amount of the sewer rates then due. The claim for the rent reserved in specified instalments and that for the amount of the rates constituted one indivisible demand or cause of action. The parties were the same, both claims arose out of the same contract and both sums were parts of the same rental or consideration for the use of the land. A lessor is not in such a case at liberty to split his claim and to sue for one part of the rent in one action and another part in another action. The former judgment would bar the plaintiff from recovering these rates of the defendants in a new action. This answers the second question submitted. Whether or not the lessees, in the event of their being compelled to pay to the Territory that portion of the rates which accrued prior to the action of assumpsit, could, in the face of their specific covenant, recover of the lessor the amount so paid by them is a question which has not been argued and which does not arise under the terms of the submission.

At the date of the lease there was an artesian well on the vacant lot known as the "park" and by the terms of the lease excepted from its operation. The method at that time of furnishing water to the excepted buildings and other property was by pumping with a gasoline engine from the well into an elevated tank about thirty feet high on the leased premises, the water flowing from the tank by gravity to the points where required; and into a swimming tank reserved from the operation of the lease water flowed directly from the well. On October 7, 1907, the plaintiff leased to one Steere certain premises adjoining the lot known as the "park," and as a part of the same transaction the defendants entered into a verbal agreement with Steere to furnish him water from the well for certain laundries which he proposed to erect on the land demised to him, at a stated rental. Subsequently, the defendants asking a higher rental of Steere than that agreed upon, the plaintiff urged

upon them the execution of a lease at the agreed rate and there-after the lease was signed. The third question is whether un-der the lease the defendants are under obligation to pump the water required for the reserved buildings or simply to permit the lessor to take the water as it stands in the well.

The provisions of the lease relating to water are as follows: "And it is further understood and agreed that" the lessees "shall have the right into and the sole ownership excepting as in-hibited by the provisions of this lease, of all of the water upon said premises and said" lessees "can dispose of said water either by sale thereof if they so desire within the term of this lease, so that no injuries shall accrue to the premises or its water rights, nor can this water privilege of water rights be sold, transgressed or assigned to any other parties or persons or corporations or copartnership without the written consent of" the lessor. "And it is further understood and agreed that all and any sums of money that comes from the sale of water shall be the sole property of" the lessees, and said lessees "shall have the right of way for laying pipes through that part of the premises known as the park without let or hindrance, they not committing waste in the laying of said pipes and to sell said water excepting that reserve herein, when and to whom they please. * * * It is agreed moreover that" the lessees "shall supply to" the lessor "free of charge all water required for buildings and grounds expressly reserved under this lease." In *Richards* v. *Ontai*, 19 Haw. 451, it was held, construing this lease, that "the grant to the lessee includes all of the flow of an artesian well on the excepted premises other than water sufficient for the excepted buildings and grounds in the condi-tion in which they were at the date of the lease," but the pre-cise question as to the lessees' duty to pump was not then be-fore the court. As stated in the former opinion, "The parties are presumed to have made their contract with reference to conditions as they existed at the time." Id. 455. It is to be noted that the provision in favor of the lessor is not merely a

reservation of water sufficient for the purposes stated. It goes farther. The specific agreement is that the lessees shall *supply* to the lessor *free of charge* all water required for the reserved *buildings* and grounds. It was clearly contemplated by the parties that the water referred to in this agreement was to be used in the *buildings* named as well as on the grounds. To the swimming tank it could flow by gravity, as it was then flowing, but as to the buildings it was obviously not the intention that the water should be furnished at the property line or at any other point where it would be useless. It was the intention, as we read the lease, that without cost to the lessor the lessees should furnish the water for the buildings in the manner in which it was then being furnished, that is to say, in an elevated tank whence it could flow by gravity to the desired portions of the buildings. Nor is the lessor estopped to make her present claim in this respect by the part which she took in obtaining the execution of the lease from the defendants to Steere. In that lease it was expressly provided that "The lessors hereby reserves and excepts from the operation of this lease the right to take and use so much of the water from said artesian well as can flow through the pipes which they have already connected therewith; also the right to pump such water from said well as they may be able to pump with the pump now connected therewith or by any other pump of similar capacity," also water for said other purposes "and also the right to lease all surplus water." The reserved right to pump protected the interests of the present plaintiff.

The lease included an agreement "that the building containing Hale Aloha is reserved for charitable purposes and any rental of any part of this building for money consideration shall be subject to agreement between parties for the first and second part." On December 11, 1907, the plaintiff leased to one Yong Kee a part of the buildings known as Hale Aloha, and on December 28, 1907, wrote to the lessees: "I am having signed a lease to Yong Kee which you will have to sign in

view of the provisions in my lease to yourself and brothers. In view of the foregoing and in further view of your collecting rents from Yong Kee and other tenants of the building I am putting in your charge this building with the right to let rooms above the stores in accordance with an understanding with me, as to price, etc., and to collect all rents of the building with the understanding that as long as you do this and as long as you continue to be a tenant of Mary A. Richards and hold the Kauluwela Lodgings, that you will share equally in the net proceeds of the building. I will expect to have an accounting at the end of each month and a payment of my part of the income. No changes in the building nor expenses may be incurred without my express permission. I also reserve the right to retain a room for my fireman, and one other should I desire it, due notice of which desire shall be given you." The defendants assented to this lease, apparently in consequence of the offer contained in the letter of December 28. The fourth question is whether or not the right of the lessees to collect rents from Hale Aloha is assignable. In our opinion it is not. In the original lease title to the Hale Aloha was reserved to the lessor, the only control given to the lessees being that the building could not be devoted to commercial purposes without their assent. In consideration of that assent the lessor made the offer contained in her letter, but that instrument merely constituted the Ontais agents of the lessor to let rooms and to collect rents, taking as their compensation for the services rendered one-half of the net proceeds. The authority was personal to the Ontais and is not assignable.

Judgment accordingly.

*C. R. Hemenway* (*Smith, Warren & Hemenway* on the brief) for plaintiff.

*J. A. Magoon* (*Magoon & Weaver* on the brief) for defendants.