# IN THE MATTER OF THE TRUST ESTATE OF HENRY WHARTON, DECEASED.

## No. 1605.

RESERVED QUESTION FROM CIRCUIT JUDGE FIRST CIRCUIT. HON. R. J. O'BRIEN, JUDGE.

ARGUED MAY 29, 1925.                    DECIDED JUNE 29, 1925.

PETERS, C. J., PERRY AND LINDSAY, JJ.

TRUSTEES—*compensation—leases—payment of taxes by tenant.*

> Where land held in trust had been leased by the original owner the lease providing that the tenant pay the taxes, and the trustee had paid the taxes and recovered the same from the lessee, such taxes, being in effect a part of the rent for the use of the demised premises, the trustee is entitled to the usual commissions allowed upon moneys received in the nature of income under section 2544, R. L. 1925.

OPINION OF THE COURT BY LINDSAY, J.
(Peters, C. J., dissenting.)

Henry Wharton, during his lifetime, leased certain lands to Waialua Agricultural Company, Limited, for a term of twenty-five years from September 1, 1909, the lessee covenanting, among other things, to pay an annual rental of $425, and also all taxes, assessments

and other charges lawfully assessed against the demised premises. By the will of said Wharton, the land demised, as well as other property, was devised to Henry Waterhouse Trust Company, Limited, upon certain trusts set forth in the will.

On May 23, 1924, the trustee filed its petition for the approval of its sixth annual account as trustee, praying that the same be examined, audited and approved. As shown in the account, the trustee had paid taxes for the year 1923, amounting to $312.98, on the leased land, which amount the trustee later recovered from the lessee. The trustee, regarding said amount of $312.98 as income, charged a commission thereon at the rate of seven per cent, amounting to $21.91. The master, appointed by the court to examine and audit the account, urged that the trustee was not entitled to the commission charged and recommended that it be surcharged therewith.

The circuit judge has reserved for our consideration the question as to whether such taxes, when paid, constitute moneys received in the nature of revenue or income, entitling the trustee to commissions thereon under the provisions of section 2544, R. L. 1925.

Although no express provision has been made by statute for fees allowable to trustees, it has for many years been the rule in this jurisdiction to allow trustees the same compensation allowed to executors, administrators and guardians under section 2544, R. L. 1925, which provides that "Executors, administrators and guardians shall be allowed the following commissions upon all moneys received and accounted for by them, that is to say: * * * Upon all moneys received in the nature of revenue or income of the estate, such as rents, interest and general profits, ten per centum for the first thousand dollars, seven per centum for the

next four thousand dollars, and five per centum for all amounts over and above the first five thousand dollars. Such commissions of ten, seven and five per centum, to be allowed upon each accounting when made, but not oftener than once a year."

In this Territory it is the duty of the owner of real property to return the same for taxation, and the assessment is made against the owner, who is liable for the payment of the taxes. Many leases, probably the majority of leases, contain, as in the instant case, covenants that the lessee, in addition to the stipulated rent, will pay all taxes assessed, but such agreement between the parties to the lease cannot affect the obligation of the lessor to the government to pay the taxes. In the instant case, the lessor, or rather his successor in interest, the trustee, having paid the taxes and recovered the same from the lessee, is the trustee entitled to charge the ordinary commission on the amount collected?

While the precise question has never been presented to this court, it is of interest to note, from many cases called to our attention by counsel, that the question has frequently been raised before circuit judges presiding in equity, who have generally held that trustees, in cases similar to this, are entitled to commissions on sums representing taxes paid by tenants under the covenants of their leases.

While, strictly speaking, the words "rent" and "taxes" have entirely different meanings, where a party agrees to pay for the use of land a definitely stated annual amount and, in addition to such amount, agrees to pay all taxes assessed against the land, there would seem no room for doubt that, as far as the lessee is concerned, the total sum that he is required to pay constitutes rental for the use of the land. It is imma-

terial to the lessee that the additional amount to be paid is not, in the lease, called rental but is called taxes, the result of such an agreement being simply that the lessee is required to pay both of the stated amounts for the use of the land and such payment is undoubtedly in the nature of rental.

"Whatever a tenant is required to pay as a compensation for the right to occupy land may generally be termed rent." *W. S. Quinby Co.* v. *Sheffield,* 79 Atl. (Conn.) 179, 183.

"A payment of taxes under a covenant in a lease is clearly in the nature of a payment of rent to the lessor and is not a payment of taxes so far as the lessee is concerned." *Tax Assessment Appeals,* 11 Haw. 235, 240.

And this court in *Richards* v. *Ontai,* 20 Haw. 335, has clearly indicated that in its opinion, taxes payable by a lessee are in reality an additional part of the rent payable. In that case the plaintiff leased certain premises to defendant at an annual rental payable quarterly. The lease provided that the lessor should pay the taxes levied on the premises and that the lessees should pay all other charges of the leased premises and meet all requirements of the board of health at their own cost and expense. In a submission on an agreed statement of facts the first question submitted was whether the lessor or the lessees were liable under the terms of the lease to pay the sewer rates. The court held that sewer rates are not taxes within the ordinary meaning of the term and that the lessees were liable. On April 22, 1908, the lessor brought an action of assumpsit against the lessees for $685, being a balance of rent due under the lease, and recovered judgment. The second question was whether that judgment was a bar to the recovery by the plaintiff of that part of the sewer rates in controversy, which accrued prior

to the institution of that action of assumpsit. This
court held the action barred, saying at page 338: "The
payments agreed to be made for sewer rates and expen-
ditures caused in compliance with board of health
regulations, like similar payments for taxes, are in the
nature of rent for the use of the demised premises;"
and again, at page 340: "The lessor, then, had, at the
date of the commencement of the action for the other
portion of the rent, a right of action against the lessees
for the amount of the sewer rates then due. The claim
for the rent reserved in specified instalments and
that for the amount of the rates constituted one indivisi-
ble demand or cause of action. The parties were the
same, both claims arose out of the same contract and
both sums were parts of the same rental or considera-
tion for the use of the land. A lessor is not in such a
case at liberty to split his claim and to sue for one
part of the rent in one action and another part in
another action."

"In its ordinary and natural usage, the word 'rent'
does not include an amount paid by the lessee as taxes,
but an agreement to pay taxes upon the demised prem-
ises and other premises of the lessor may constitute a
rent, and taxes which are assumed by the tenant as a
part of the compensation for the use of the premises
have been regarded as rent." 36 C. J. 291.

And the fact that the amount of taxes to be paid each
year is uncertain does not alter the situation for, as
said by the court in Re Spies-Alper Co., 231 Fed. 535,
537, in holding that the taxes covenanted to be paid
by a lessee are in effect a part of the rent under the
lease, "although the taxes which the lease provided
that the tenant should pay were uncertain in amount
at the beginning of any contract or calendar year, they
were sure to be made certain and definite before the

time of payment would arrive; and the covenant to pay them was not a mere personal one, independent of the covenant reserving the rent, but was a part thereof. Undoubtedly, therefore, under the decisions in New Jersey they were rent and might be distrained for when they became due and payable."

"The payment of the taxes for the lessor under a covenant of this sort constitutes in reality merely a payment of the rent. As between the lessee and the lessor it is not material whether the former pays a certain stipulated sum for rent direct to the lessor out of which the latter will discharge his taxes or whether the lessee pays a smaller sum to the lessor and himself pays the taxes. The result to the lessee is always the same." 2 Underhill, Landlord & Tenant, Sec. 607.

"There is no question in our minds that payment of the taxes was part of the rent reserved by the lessors for the use of the premises. Otherwise there was no consideration for the agreement to pay them." *Perrin & Smith Printing Co.* v. *Cook Hotel & Excursion Co.,* 93 S. W. (Mo.) 337, 339.

The amount upon which the commissions involved were charged was money actually received, in cash, by the trustee. No question of moneys constructively received is presented in the case at bar. So, also, it is unnecessary to consider whether the government was compellable to accept payment of the taxes from the lessee. It may be assumed that one proper method of procedure would have been for the lessee to have paid the taxes direct to the government and that the government could have been compelled to accept the payment. Nevertheless, it is perfectly obvious that the procedure which was in fact followed in this instance by the parties was a proper one. The lessor, whose interest and title would have been jeopardized by nonpayment

of the taxes through neglect, inadvertence or for any other reason and who under our statutes was undoubtedly liable to the government and had an indisputable right to pay the taxes, promptly paid them direct to the government and then received the amount from the lessee. This method of procedure was acquiesced in by both of the parties interested and neither of them is now disputing it. It is true that under this method the *cestuis que trustent* are made to bear additional commissions, but they, on the other hand, received additional service which was well calculated to preserve their title and protect their interests and was entirely in keeping with the terms of the lease and the duties of the trustee. The cases cited in the dissenting opinion recognize the right of the lessor, under similar covenants in leases, to recover, by suit, from the lessee the amount of the taxes, even without their first having been paid by the lessor. That which the lessor can with the aid of a suit lawfully compel the lessee to do, it can with equal propriety accept the performance of without suit.

In Pennsylvania, under a statute which provides that the court may allow reasonable fees to trustees for their services, it appears to be the custom to allow trustees five per cent commissions on the amount of moneys rceived by them, and the court in *Re McCallum's Estate*, 211 Pa. 205, which is the only case called to our attention involving the right of trustees to commissions on taxes paid by lessees under covenants in their leases, has directly held that such taxes are a part of the rent for the use of the demised premises and that trustees under such leases are therefore entitled to a commission upon the gross amount the tenants are required to pay. Replying to the contention made in that case, that such commissions were not properly charge-

able, the court said, p. 208: "The only other question is as to commissions on the income of the Chestnut street property prior to its sale. The testator was only one of three owners, and after his death it was rented for a sum which, with taxes, etc., which the tenants were required to pay, amounted to $20,000 per annum. The arrangement was obviously for the protection of the lessors as between themselves; and the obligation of the tenants, who in this respect simply bound themselves to act as agents for the lessors in paying part of what was, practically, their rent in discharge of the joint liability of the lessors, was quite as great as their liability to pay the balance, enforceable by action on the lease, at least, if not by distress. It was quite as beneficial to the estate of the testator as if the whole of its share of the $20,000 had been required to be paid in cash and one-third of the taxes afterwards paid from it. Under these circumstances, it is not easy to see why the accountants who secured the benefit of this lease for the estate of which they had the care should not receive the usual compensation of five per cent upon the gross amount required to be paid by the tenants; and as this was expressly conceded by the owners of two-thirds of the income, we think the objection on behalf of the minor owning the other third should have been overruled."

Inasmuch, therefore, as the taxes payable by the tenant in this case are, in our opinion, a part of the rental for the use of the demised premises, the trustee is entitled to charge the commission ordinarily allowed for the collection thereof, and the reserved question is answered in the affirmative.

A. G. M. Robertson (Robertson & Castle and Frear, Prosser, Anderson & Marx on the brief) for the trustee.

H. K. Ashford (also on the brief) amicus curiae.

R. L. 1925, s. 2544, in clear and explicit terms pre-scribes that the compensation of fiduciaries be com-puted upon "moneys received." As between landlord and tenant the assumption and payment by the lessee of the taxes assessed against the lessor upon the demised premises may properly be considered in the nature of rent and hence revenue or income. But this is equally true of covenants of lessees to repair, insure or make improvements. The question reserved, however, does not involve the relation of landlord and tenant but that of trustee and *cestui que trust*. That the result of a cov-enant of the lessee may be in the nature of rent is not enough to entitle a trustee to compensation thereon under a statute confining the compensation of trustees to a fixed rate upon "moneys received" by them. It is not sufficient that the result of the covenant be in the nature of rent or in the nature of revenue or income but it must be "money" and it must be "received" by the trustee before he is entitled to compensation in respect thereof. The statute says: "Upon all *moneys received* in the nature of revenue or income," etc. These two essential elements, to wit, money and its receipt by the trustee, must be coexistent otherwise the trustee is not entitled to compensation. A covenant by a lessee to pay the taxes assessed against the demised premises is comparable with and differs in no wise from the ordinary undertaking to pay certain debts of another as they may accrue. The debtor may be enriched to the extent of the undertaking; such enrichment may be in the nature of revenue or income; but no money passes between the covenantor and the debtor; the debtor does not receive money; the amount of the debt is paid to the creditor. And unless the revenue or in-come be "money" and "received" by the trustee com-

pensation does not attach. A covenant by a lessee to pay taxes assessed against the demised premises is not a covenant to pay the amount of the taxes to the lessor but to pay the taxes to the tax assessor having authority to receive the same. Such a covenant imposes upon the lessee the duty to ascertain the amount of the taxes and to pay them to the tax assessor when due. (*Bacon* v. *Park,* 57 Pac. (Utah) 28, 30; *Ellis* v. *Bradbury,* 17 Pac. (Cal.) 3, 4, 5.) The reason for the rule is that the covenant is not one of indemnity against the tax but a promise to pay it. (*Richardson* v. *Gordon,* 74 N. E. (Mass.) 344, 346; *Fountain* v. *Schulenberg & Boeckler Lumber Co.,* 18 S. W. (Mo.) 1147, 1148; *Richards* v. *Ontai,* 20 Haw. 335, 338, 339, and cases cited.)

In the instant case reimbursement was made by the lessee to the trustee for the 1923 taxes theretofore paid by the trustee to the tax assessor entitled to receive the same. It is upon this payment by way of reimbursement that the trustee credited itself with commissions as "moneys received in the nature of revenue or income." These taxes were due and payable on January 1, 1923. At that time it was the duty of the lessee to ascertain the amount of the taxes assessed against the trustee in respect to the demised premises and pay them to the tax assessor entitled to receive the same. It is not claimed that the Waialua Agricultural Company on January 1, 1923, was insolvent or unable to perform its covenant. Upon failure of the Waialua Agricultural Company to pay the taxes due on January 1, 1923, a cause of action accrued immediately to the trustee against the company upon its breach of its covenant to pay the taxes. To sustain such action it was not necessary that the trustee first pay the taxes assessed to the tax assessor entitled to receive the same. (*Richardson* v. *Gordon, supra; Fountain* v. *Schulenberg &*

*Boeckler Lumber Co., supra; Rector, etc., v. Higgins,* 48 N. Y. 532.) Had the lessee performed its legal duty the amount of taxes unquestionably would not have come into the hands of the trustee. The gratuitous advance by the trustee of the amount of these taxes cannot convert the amount of its reimbursement into "moneys received in the nature of revenue or income." The statute clearly contemplates actual in contradistinction to constructive receipt. The majority loses sight of the legal duty of the lessee and bases its conclusion upon the mere fact that the trustee paid the taxes and was actually reimbursed by the lessee in the amount thereof. The legal duty of the lessee, however, and not the facts, controls. . Otherwise a trustee actuated by selfish interests might anticipate and perform his lessee's covenants, including those to effect insurance of the demised premises, to repair or to make improvements thereon, and upon reimbursement by the lessee of advances made with propriety claim commissions thereon. I do not desire to be taken as impugning any improper motives of the present trustee. Quite to the contrary. I understand that the circuit courts have allowed trustees commissions upon advances for taxes and no doubt the approved practice was followed in the instant case. I understand also that the circuit courts have allowed commissions on insurance premiums advanced by trustees. Be that as it may. A trustee should perform the duties of his trust with an eye single to the interests of his *cestui que trust.* Trustees' commissions are by way of compensation for services performed by the trustee in connection with "moneys received" as income or revenue and if the result of covenants imposed by a trustee upon his lessee is to require the latter to make payments of moneys in the nature of income to persons other than the trustee, the trustee should not be per-

mitted to anticipate the covenants and make advances necessary therefor simply for the purpose of earning commissions. He should see to it that his lessee personally performs his covenants and that the estate is thereby saved commissions on the amount involved in their performance.

Stress was laid on the legal results of our local property assessments, that is, that the assessment of the fee of demised premises is made directly against the lessor. I see no difference between our local statutes in that regard and those of Massachusetts, Utah, Missouri or California, where, according to the foregoing cited authorities, taxes payable by the lessee under his covenant are payable by him directly to the tax assessor. Nor can it be said that the tax assessor does not know the lessee in the matter and hence may refuse to accept taxes tendered by the latter. Upon exhibit by the lessee of his lease the assessor would certainly be bound to accept the taxes. It could not be seriously contended that a tender by the lessee of the taxes would not be a complete defense in an action by the tax assessor against the lessor therefor. Although the trustee in the instant case was itself indebted to the Territory for the amount of the taxes it was its duty nevertheless to insist upon the lessee's observing its covenant and paying them when due. The payment of the taxes by the trustee was clearly an advance and the subsequent repayment to it by the lessee of the amount thereof was a reimbursement for such advance. Reimbursement for an advance by a trustee is not "moneys received in the nature of revenue or income." The majority relies upon *In re McCallum's Estate*, 60 Atl. (Pa.) 903. In Pennsylvania there is no fixed basis of computation of trustees' commissions. The statute confers jurisdiction upon the court to allow such compensation

to trustees as it may deem "reasonable and just." There are no limitations such as are contained in the local statute confining compensation to a fixed rate computed upon "moneys received."

The question reserved should in my opinion be answered in the negative.