88 P.3d 202 (2004)
104 Hawai'i 267
In the Matter of the TRUST CREATED UNDER the WILL DATED NOVEMBER 15, 1917 OF Emanuel S. CUNHA, Deceased.
Carma R. Meng, Donna Patricia Murray, and Harve D. Murray, Petitioners-Appellees,
v.
Hawaiian Trust Company, Ltd., Respondent-Appellant.
No. 23684.
Supreme Court of Hawai'i.
April 23, 2004.
*203 Conrad M. Weiser and Mark B. Desmarais (Goodsill Anderson Quinn & Stifel), on the briefs, for respondent-appellant Pacific Century Trust.
Carroll S. Taylor, Kimo C. Leong, and Gregory W.K. Chee, on the briefs, for petitioners-appellees Carma R. Meng, Donna Patricia Murray, and Harve D. Murray.
Randall M.L. Yee, on the briefs, for Contingent beneficiaries-appellees Richard Cunha, Richard D. Cunha, John M. Cunha, Anthony L. Cunha, Peter Ross, Brandy A.K. Ross, Bernice Gay, Danielle A.W. Gay, and Kathryn Ann C. Sciarretta.
MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.
Opinion of the Court by DUFFY, J.
Defendant-appellant Pacific Century Trust (previously Hawaiian Trust Company) [hereinafter, the Trustee] appeals from the order denying its motion for partial summary judgment issued by the first circuit court, the Honorable R. Mark Browning presiding. This appeal involves the interpretation of Hawai'i Revised Statutes (HRS) §§ 560:7-205 (1993)[1] and 607-18 (1993)[2] as to whether the Trustee's fees were lawful. The Trustee contends that, pursuant to these statutes, its fees were lawful because the fees complied with the statutory fee schedule set forth in HRS § 607-18. The appellees, trust beneficiaries who contest the Trustee's calculation of its fees, argue that HRS § 560:7-205 imposes *204 a reasonableness requirement on a trustee's determination as to what constitutes trust "income."[3]
Based on the following, we vacate the circuit court's order and instruct the circuit court to grant the Trustee's motion for partial summary judgment.

I. BACKGROUND

On September 24, 1997, three beneficiaries of the Will and of the Estate of Emanuel S. Cunha, Deceased [hereinafter, the Trust] filed a Petition for removal and surcharge of the Trustee.[4] The beneficiaries (Carma R. Meng, Donna Patricia Murray, and Harve D. Murray [hereinafter collectively, the beneficiaries]), great grandchildren of Emanuel S. Cunha, together receive approximately 83% to 84% of the income created by the Trust.[5] The Trust's principal assets are the leased-fee interests in the land beneath the Queen Kapiolani Hotel and the Park Shore Hotel in Waikiki on the island of O'ahu; lease rent from the hotels is the primary source of income to the Trust. In addition to the monthly rent, the lessees pay the Trust all real property taxes on the property.
The Petition alleged that the Trustee charged the Trust an income commission both on the rent received and on the real property taxes collected by the Trust. The Petition noted that rising property taxes led to rising income commissions for the Trustee, such that the income commissions collected by the Trustee had become "grossly disproportionate to [the Trustee's] responsibilities and work related to [the] real property tax payments." The beneficiaries alleged that, from 1985 to 1994, the Trustee received approximately $260,284.28 in income commissions on the real property taxes alonealmost double the $138,406.75 the Trustee received in income commissions on the monthly rent received from the hotel lessees for that same time period. The beneficiaries therefore requested, inter alia, that the circuit court remove and surcharge the Trustee.
The beneficiaries based their request for removal and surcharge on an in pari materia reading of HRS §§ 560:7-205 and 607-18. Although HRS § 607-18 provides a statutory schedule for trustee fees, the beneficiaries contend that HRS § 560:7-205 imposes a reasonableness restriction that constrains the statutory schedule.
The Trustee maintains that its commissions were lawful.[6] On March 1, 2000, the Trustee moved for partial summary judgment.[7] The Trustee argued (and continues to argue) that HRS § 607-18(a) provides for fixed-percentage commissions on trust income and that these percentages are mandatory because the statute states that the trustee "shall be allowed" commissions on income at statutorily specified rates. Furthermore, the Trustee contends that the legislative history *205 of HRS § 560:7-205 demonstrates that the legislature never intended to impose a separate "reasonableness" gloss on the statutory fee schedule set forth in HRS § 607-18.
On August 1, 2000, the circuit court denied the Trustee's motion for partial summary judgment. The same day, the beneficiaries, the contingent beneficiaries, and the Trustee stipulated that an interlocutory appeal of the circuit court's order would substantially hasten the resolution of the case. The circuit court granted the parties' stipulation for leave to file an interlocutory appeal.

II. STANDARD OF REVIEW

This court reviews a circuit court's grant or denial of summary judgment de novo. Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). The standard for granting a motion for summary judgment is well settled:
[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.
Id. (citations, internal quotation marks, and some brackets omitted).
Bremer v. Weeks, 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004).

III. DISCUSSION

In 1976, the legislature enacted the Uniform Probate Code (UPC). See 1976 Haw. Sess. L. Act 200, § 1 at 372. The UPC included what is now HRS § 560:7-205, as well as a version of HRS § 607-18 similar to the one in effect today. See id. at 466, 483-84. The beneficiaries contend that the passage of Act 200 demonstrates that the legislature intended to impose a reasonableness requirement as to what constitutes trust "income" for the purpose of trustee fee calculation. The Trustee, on the other hand, argues that legislative history, as well as the plain language of the statute itself, flatly rules out any legislative intent to modify the statutory fee schedule. Both are correct. As discussed in the following section, we agree with the beneficiaries that HRS § 560:7-205 allows this court to review the reasonableness of the determination of trust estate income; however, as discussed in section B, infra, we agree with the Trustee that the text and history of HRS § 607-18 prohibit this court from altering the statutory fee schedule.
A. HRS § 560:7-205 Allows This Court To Review The Reasonableness Of A Trustee's Determination Of Trust Estate Value Or Income.

1. Principles of statutory construction
We are mindful of several canons of statutory construction applicable to the analysis of HRS §§ 560:7-205 and 607-18. First, we have repeatedly held that:
[T]he fundamental starting point is the language of the statute itself.... [W]here the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning. When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.
Mathewson v. Aloha Airlines, Inc., 82 Hawai'i 57, 71, 919 P.2d 969, 983 (1996) (quoting Housing Fin. and Dev. Corp. v. Castle, 79 Hawai'i 64, 76-77, 898 P.2d 576, 588-89 (1995)). Second, HRS § 1-16 (1993) provides that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." Third, "where there is a `plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific *206 will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." Mahiai v. Suwa, 69 Haw. 349, 356-57, 742 P.2d 359, 366 (1987) (citations omitted). Fourth, we follow the precept that "[i]f the statutory language is ambiguous or doubt exists as to its meaning, courts may take legislative history into consideration in construing a statute." Franks v. City and County of Honolulu, 74 Haw. 328, 335, 843 P.2d 668, 671-72 (1993) (citations, internal quotation signals, and brackets omitted).
2. Applying these principles to the instant case
HRS § 560:7-205 provides in part that "the court may review ... the reasonableness of the determination of trust estate value or income made by the trustee for the purpose of computing the fee allowed by section[] 607-18[.]" Thus, the plain language of the statute allows a court to review a trustee's determination that a particular item constitutes income; on the other hand, the statute does not permit a court to review the reasonableness of the fees permitted under HRS § 607-18 once a particular item has been deemed "income."[8] Therefore, the legislature has given this court the authority to review the Trustee's determination that real property taxes constitute "income" for purposes of calculating its fee pursuant to HRS § 607-18.
Although we need go no further, we are constrained to observe that the foregoing analysis is consistent with the legislative history of HRS § 560:7-205. In amending the proposed statute, the Conference Committee noted that it intended "to retain the existing statutory fee schedule for trustees." Sen. Conf. Comm. Rep. No. 24-76, in 1976 Senate Journal, at 872. The Conference Committee explained why it declined to alter the statutory fee schedule:
Whereas a statutory fee schedule based on the value of the assets being administered may not be appropriate in the case of decedent's [sic] estates in view of the nature of such proceedings as one-time endeavors, your Committee feels that such a fee schedule is appropriate in the case of a trust which entails continuing responsibility and liability. The trustee is in the nature of a businessman with a continuing obligation for the affairs of the trust, and it seems appropriate to your Committee that his compensation be based upon the amount of responsibility assumed. It is your Committee's intent that this section empowers an interested person to obtain judicial review of the trustee's methods of valuing assets and allocating receipts to principal and income, and empowers the court to review the reasonableness of the trustee's compensation for special services upon application of an interested person.
Id. Therefore, based on the plain language of and the legislative history underlying HRS § 560:7-205, we hold that courts may review the reasonableness of a trustee's determination as to what constitutes "income."
B. The Trustee's Determination Of Trust Income Was Reasonable Because "Income" Includes Real Property Taxes.
In In re the Estate of Bishop, 53 Haw. 604, 499 P.2d 670 (1972), we held that commercial property taxes were "income" for the purposes of calculating a trustee's fee.[9] We explained as follows:

*207 Amounts paid by lessees as `rents' are `in the nature of revenue [or] income.' The fact that some portion of the amount received must be paid to the State for taxes does not change the nature of the amount received. Were we to accept the [alternative] position, we would be constrained to deduct all expenses from all amounts received and compute commissions on the basis of the Estate's net income. Such is not the intent of the statute.
Id. at 606, 499 P.2d at 672. See also In re Wharton's Trust Estate, 28 Haw. 502, 509 (1925) ("Inasmuch ... as the taxes payable by the tenant in this case are, in our opinion, a part of the rental for the use of the demised premises, the trustee is entitled to charge the commission ordinarily allowed for the collection thereof[.]"). In In re the Estate of Bishop, over thirty years ago, we expressed our concern over rising property values and the corresponding rise in property taxes and trustees' fees. Id. at 606, 499 P.2d at 672. However, we held that "[t]he question of whether the formula used in computing trustees' commissions should be re-examined... is a legislative problem, and we are unable to reduce the amount of commissions awarded in the absence of legislative action." Id. (emphasis added).
As discussed supra, this court may review the reasonableness of a trustee's determination as to what constitutes trust "income." In the instant case, the Trustee's determination that the property tax payments were "income" was reasonable: we have repeatedly held that, pursuant to the statutes on trustees' fees, property tax collections constitute "income." In re the Estate of Bishop, 53 Haw. at 605-06, 499 P.2d at 672; In re Wharton's Trust Estate, 28 Haw. at 509. Furthermore, HRS § 607-18 provides that a trustee "shall be allowed as commissions" specified percentages on trust income. (Emphasis added.) Therefore, our conclusion that the Trustee's determination that the property tax moneys constituted "income" ends our authority to review the Trustee's fees. Unlike charitable trusts (where the legislature has given the courts discretion to review the reasonableness of a trustee's fee, see HRS § 607-20 (Supp.2003)), the legislature has provided a specific statutory schedule for trustees' fees for private trusts. In the absence of legislative action that changes the definition of "income" or the statutory fee schedule, we must uphold the Trustee's commissions as lawful.[10]

IV. CONCLUSION

Based on the foregoing, we vacate the circuit court's August 1, 2000 order denying the Trustee's motion for partial summary judgment. We remand to the circuit court with instructions to grant partial summary judgment in favor of the Trustee.
NOTES
[1] HRS § 560:7-205 provides:

Proceedings for review of employment of agents and review of compensation of trustee and employees of trust. On petition of an interested person, after notice to all interested persons, the court may review the propriety of employment of any person by a trustee including any attorney, auditor, investment advisor or other specialized agent or assistant, the reasonableness of the compensation of any person so employed, the reasonableness of the determination of trust estate value or income made by the trustee for the purpose of computing the fee allowed by sections 607-18 and 607-20, and the reasonableness of any additional compensation for special services under sections 607-18 and 607-20. Any person who has received excessive compensation from a trust may be ordered to make appropriate refunds.
[2] HRS § 607-18 provides:

Fees and expenses of trustees. (a) Upon all moneys and other property received in the nature of revenue or income of the estate, such as rents, interest, dividends, and general profits, trustees, except trustees of a charitable trust, shall be allowed as commissions payable out of the income received during each year, seven per cent for the first $5,000, and five per cent for all over $5,000 the commissions to be payable as and when the income is received, but not more often than once a year.
(b) Upon the principal of the estate, trustees shall be allowed as commissions one per cent on the value at the inception of the trust payable at the inception out of the principal, one per cent on the value of all or any part of the estate upon final distribution payable at the termination out of the principal, and two and one-half per cent upon all cash principal received after the inception of the trust and neither being nor representing principal upon which the two and one-half per cent has previously at any time been charged, payable at the receipt out of the principal, and two and one-half per cent upon the final payment of any cash principal prior to the termination of the trust, payable at the final payment out of the principal, and in addition thereto five-tenths of one per cent on the value at the expiration of each year during the continuance of the trust payable annually out of the principal; provided that such five-tenths of one per cent on the principal shall not apply to charitable trusts, nor to the extent the trustee has employed others to perform bookkeeping and clerical services at the expense of the estate as permitted by the trust document or as provided in section 554A-3.
(c) Such further allowances may be made as the court deems just and reasonable for services performed in connection with sales or leases of real estate, contested or litigated claims against the estate, the adjustment and payment of extensive or complicated estate or inheritance taxes, the preparation of estate and income tax returns, the carrying on of the decedent's business pursuant to an order of court or under the provisions of any will, litigation in regard to the property of the estate, and such other special services as may be necessary for the trustee to perform, prosecute, or defend. All contracts between a trustee and a beneficiary other than the creator of the trust, for higher compensation than is allowed in this section shall be void.
(d) This section shall apply as well to future accounting in existing estates as to new estates.
[3] Pursuant to HRS § 607-18, trustee fees are based on trust income and principal. Therefore, a trustee's determination as to what constitutes "income" has a direct impact on the trustee's fees.
[4] Pacific Century Trust, a division of Bank of Hawaii, is the successor by merger to Hawaiian Trust Company, Ltd.
[5] The remaining beneficiaries are May Cunha Ross, who receives $1,200 a year of the Trust's income, and a resulting trust. The resulting trust is for "subsequent distribution to the intestate heirs of the Testator upon the termination of the testamentary trust." The contingent beneficiaries-appellees, some or all of whom will become vested remainder beneficiaries at the time of May Cunha Ross's death, are Richard Cunha, Richard D. Cunha, John M. Cunha, Kathryn A.C. Sciarretta, Anthony L. Cunha, Peter Ross, Brandy A.K. Ross, Danielle A.W. Gay, and Bernice Gay.
[6] The contingent beneficiaries of the estate also responded to the beneficiaries' Petition. The contingent beneficiaries objected to the removal of Pacific Century Trust as Trustee. In their answering brief, the contingent beneficiaries agree with the Trustee that there is no "reasonableness" restriction on the statutory fee schedule.
[7] The Trustee moved for partial summary judgment in its favor:

as to the claim in Paragraph 17 of the Petition for Removal and Surcharge of Trustee filed herein on September 24, 1997, which asserts that [the Trustee] committed various breaches of trust by "characterizing the real property tax payments as `income' rather than as funds for which it serves as a conduit (with the result that no commissions would have been chargeable on the real property tax payments since no `income' would have been received" by [the Trustee]).
[8] The beneficiaries are correct that a trustee is required "to administer a trust expeditiously for the benefit of the beneficiaries," HRS § 560:7-301 (1993), and that "the trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent person dealing with the property of another," HRS § 560:7-302. However, HRS §§ 560:7-301 and 560:7-302 are general statutes dealing with a trustee's duties in a generic sense. In contrast, HRS § 607-18 is a specific statute dealing with trustee compensation. As noted supra, if these statutes are in conflict, we favor the more specific statute over the more general statute. Therefore, we cannot impose our view of what fee may be reasonable when the legislature has specifically prescribed a statutory fee schedule.
[9] In re the Estate of Bishop interpreted the then-existing version of HRS § 607-20, which provided that trustees of charitable trusts were entitled to specific commissions "on all moneys received in the nature of revenue or income of the estate, such as rents, interests, and general profits[.]" HRS § 607-20 (1968). This language is virtually identical to the language in HRS § 607-18, which provides for trustee fees "[u]pon all moneys and other property received in the nature of revenue or income of the estate, such as rents, interest, dividends, and general profits, trustees, except trustees of a charitable trust[.]" Therefore, our holding in In re the Estate of Bishop is applicable to the instant case.

HRS § 607-20 has since been amended to provide that, "in the case of a charitable trust, the compensation of the trustees shall be limited to an amount that is reasonable under the circumstances." HRS § 607-20 (Supp.2003). There is no language in HRS § 607-18 that allows a court to review a private trustee's fees for reasonableness.
[10] However, we also note, as we did in In re Wharton's Trust Estate, 28 Haw. at 507, that "[i]t may be assumed that one proper method of procedure would have been for the lessee to have paid the taxes direct to the government and that the government could have been compelled to accept the payment."